# Bissell *versus* The First National Bank of Franklin.

69   415
169   581

1. An advertisement was " Bissell & Co., Bankers, R. L. Irwin, Cashier," &c. Irwin was asked at the banking-house to discount a draft, payable to Bissell & Co.'s order, not being able to do it, at his request on the street after bank hours the cashier of a bank discounted it, Irwin endorsing it, " R. L. Irwin, Cashier." Irwin had actual charge of B. & Co.'s business;

[Bissell *v.* First National Bank of Franklin.]

signed his name as cashier in their business transactions, &c.  *Held*, under the circumstances, that B. & Co. were bound by Irwin's endorsement.

2. The cashier of an incorporated bank is the general executive officer to manage its concerns in all things not peculiarly committed to the directors; he is agent of the corporation not of the directors.

October 17th 1871.  Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Venango county :* To October and November Term 1870, No. 43.

This was an action of assumpsit, brought to April Term 1869, by The First National Bank of Franklin against George H. Bissell, James Bishop, James A. Williamson and James B. Geggie, partners as George H. Bissell & Co.

The defendants were sued as endorsers on the following protested drafts :—

"$4000.                                 "Oil City, 17th July 1868.
"One day sight with exchange, pay to the order of George H. Bissell & Co., Four Thousand Dollars, value received, and charge the same to account of
                                "E. W. MERCER.
    "To C. W. Everett, Esq., Cleveland, O.
        "Endorsed—Pay R. L. Cochran, Cash'r., or order.
                                "R. L. IRWIN, Cash'r."

"$2838.                                 "Oil City, 18th July 1868.
"One day sight with exchange, pay to the order of George H. Bissell & Co., Twenty-Eight Hundred and Thirty-Eight Dollars, value received, and charge the same to account of
                                "E. W. MERCER.
    "To C. W. Everett, Esq., Cleveland, O.
        "Endorsed—Pay R. L. Cochran, Cash'r., or order.
                                "R. L. IRWIN, Cash'r."

On the trial, November 9th 1869, the following facts appeared :—

George H. Bissell & Co. were private bankers; the partners, except Geggie, resided in New York; Geggie resided in Oil City; they had two offices, one at Oil City and the other at Petroleum Centre.

Their business card, by direction of Mr. Bissell, was published about June 1868, in a public newspaper «in Venango county; it is found at large in Judge Read's opinion.

R. L. Cochran, the cashier of the plaintiffs, testified that on the 17th of July 1868, R. L. Irwin, the defendants' cashier, asked witness in the street in Franklin, after bank hours, if he would cash the $4000 draft for him; he said it was the "draft of a customer of his payable to their order; I said I know nothing of the

[Bissell v. First National Bank of Franklin.]

parties, that if he would agree in case the paper was not paid promptly to take it up, I would discount it, if the teller of the bank would open it and give him the money; he said he wanted to accommodate this customer." On the evening of the 18th the witness met Irwin again in the street of Franklin, and asked him to cash the $2838 draft, that he was anxious to accommodate " this customer." After some hesitation, the witness said he would take the draft on the same terms as the other, if he would take it up. Irwin then endorsed the draft and directed witness to remit to James Bishop & Co. to credit of George H. Bissell & Co.; the plaintiff's draft was sent and paid by the plaintiff's correspondent in New York. The teller of plaintiff proved that he had paid to Irwin the proceeds of the $4000 draft after the bank had closed.

Mercer the drawer testified, that in 1867 and 1868, he had been engaged in buying and selling oil, and had business transactions with the defendants; Irwin was acting as their cashier during that time, and he and a clerk made the entries in the book of witness; Irwin "passed upon" the drafts; the proceeds were passed to the credit of witness with the defendants, and his checks drawn against it were honored; he had drawn a number of other drafts of a similar kind on Cleveland, which had been cashed by the defendants, he giving them railway bills of lading as collateral security. When he applied to have the drafts discounted, Irwin told him he had no currency, but would try to get them discounted at Franklin; witness took the drafts to George H. Bissell & Co., and got the proceeds less the discount.

The plaintiffs gave in evidence Mercer's bank-book with the defendants; showing a large number of entries to his credit, apparently discounts. S. T. Everett, one of the firm, drawees of the draft, testified that his firm, who were bankers, had business transactions with the defendants; the two firms making collections for each other; the drafts received by witness's firm were endorsed by Irwin as cashier. Witness produced a letter to his firm, dated July 18th 1868. It had a printed head, viz.: "George B. Bissell & Co., Bankers, Oil City, Penna." The letter said that a bill of lading sent in it, "should have gone with the $4000 draft sent by R. L. Cochran, cashier." This letter was signed, "R. L. Irwin, cashier."

Also another letter in same form, date July 20th, enclosing "two bills of lading which should have been attached to Mercer on Everett, $2838, endorsed by me and sent you by R. L. Cochran, cashier," signed "R. L. Irwin, cashier."

A number of witnesses testified that, in private banking-houses, where they have a cashier, the business of buying and selling drafts is usually done by the cashiers; bankers usually accommodate each other before or after banking hours. Others who had

19 P. F. Smith—27

been doing business with the defendants, addressed their communications to R. L. Irwin, cashier; all the drafts which came to them were signed "R. L. Irwin, cashier." Amongst others F. F. Anderson, cashier of Lamberton's Bank, said, "I have had business as a banker with Geo. H. Bissell & Co.; R. L. Irwin acted as cashier; all the business papers were signed 'R. L. Irwin, cashier.'"

Irwin for defendants testified, that the drafts were taken by the plaintiff at the discount defendants were to receive, and defendants did not charge Mercer anything more, nor make any profit on the drafts; that he endorsed the drafts in order to negotiate them. He also said on cross-examination, that he did all the business of the defendants; sometimes endorsed drafts in the firm name, and sometimes "R. L. Irwin, cashier."

Geggie, one of the firm, said, "Irwin had actual charge of the business."

The points of the parties with their answers and the portion of the charge of Trunkey, P. J., objected to, are found in the specification of errors.

The verdict was for the plaintiffs for $7376.69.

The defendants took out a writ of error. Their specifications of error were as follows:—

The court erred:

1. In their answer to plaintiff's 2d point, viz.:—

"Buying and selling drafts, time drafts and other commercial paper is within the scope of the business of private bankers."

2. In their answer to plaintiff's 3d point, viz:—

"If the jury believe, from the evidence, that the defendants were private bankers, carrying on that business at Oil City, and employed R. L. Irwin as their agent and cashier to take charge of and manage their said business, his endorsements of the drafts in question in this case bound his principals, in like manner as if the said drafts had been endorsed by a member of said firm with the firm name."

Both these points were affirmed.

3. In their answer to plaintiffs' 4th point, viz.:—

"The endorsement made on said drafts by said R. L. Irwin, cashier, was the endorsement of the payees named therein, passed the legal title thereof to the plaintiffs, and rendered the endorsers liable as such, unless there was a mutual understanding between the endorsers and endorsee, at the time of the making of the endorsement and the delivery of the drafts, that said endorsers were not to be so liable."

"Answered in the affirmative—provided it was done in the usual course of defendants' banking business."

4. In charging the jury as follows, to wit:—

"If Mercer obtained the money from the defendants, on arrangements made with them by their agent, Irwin, and the defendants

by their same agent obtained and received the money for themselves and on their own responsibility, to be taken up by them if not paid by the drawer at maturity, and on such arrangements endorsed the drafts, they are liable on the endorsement."

5. In their answer to defendants' 1st point, viz. :—

" The plaintiff have shown no sufficient authority in said cashier to make said endorsement."

This point was denied.

C. Heydrick (with whom were Taylor & Markey), for plaintiffs in error.

J. K. Kerr (with whom was S. P. McCalmont), for defendants in error.

The opinion of the court was delivered, November 13th 1871, by

READ, J.—There is no doubt that if the two drafts in favor of George H. Bissell & Co. had been endorsed by all or any of the four defendants under the same circumstances, the firm would be liable, and this judgment would be correct; and the question is, whether the endorsement by their cashier, R. L. Irwin, should not have the same effect. The firm in June 1868 published in the Venango Spectator, a weekly newspaper in the city of Franklin, the following business card :—

" GEORGE H. BISSELL & CO.,

BANKERS,

Oil City, Pa., Richard L. Irwin, Cashier.
Petroleum Centre, Pa., John E. Ray, Cashier.

Buy and sell exchange and government securities, make collections, and do a general banking business."

Three of the firm lived in New York, the other, Mr. Geggie, resided at Oil City. The advertisement, of course, implied that the authority of Irwin and Ray was equally extensive, and it is clear that Ray must have had the power to bind the firm in a case like the present, or the business of banking at Petroleum Centre by the firm could not have been carried on at all. Mr. Geggie says, " Irwin had actual charge of the business ;" and the evidence shows this to have been the case.

An incorporated bank has a president, cashier and a board of directors, and the cashier is the general executive officer to manage its concerns in all things not peculiarly committed to the directors by the charter, and he is the agent of the corporation, and not of the directors. In the case of a private bank there is no president and no board of directors, and the business may be and usually is transacted before and after as well as during the usual banking hours.

[Bissell v. First National Bank of Franklin.]

The evidence clearly proves the large powers of the cashier of a private banking firm, and that they were exercised by Mr. Irwin. One witness, the cashier of Lamberton's Bank, says, " I have had business as banker with George H. Bissell & Co., R. L. Irwin acted as cashier; all the business papers were R. L. Irwin, cashier. I think the partners lived in New York. Irwin did all the business so far as I know."

E. W. Mercer was engaged in the business of buying and selling and shipping of oil, and resided in Oil City in 1867 and 1868, and had an account with the defendants. He had, from the 3d July 1868 to the 20th, various drafts discounted by the firm, all accompanied by railway bills of lading, including the two drafts in suit, the proceeds of which he drew out by checks. The whole transaction of this business was conducted by Mr. Irwin as cashier.

It is clear, therefore, that as regarded the plaintiffs, the endorsement by the cashier was the endorsement of the firm.

Judgment affirmed.