## Stockdale, Trustee, *versus* Keyes Brothers.

1. Keyes, an oil-dealing firm, made an attorney in fact to make and endorse notes in conducting its business. Dilworth, who was factor for the firm, drew a note for his own accommodation to the other of the firm, which, without the knowledge of either of the firm, was endorsed in the firm name by the attorney, and discounted by an unincorporated banking association, in which Dilworth was a stockholder, and which had discounted business paper of the firm for him. *Held*, that Dilworth, being a partner in the bank, it was not a bonâ fide holder of the note, protected against Dilworth's improper use of it.

2. Keyes had given Dilworth two notes in payment of indebtedness to him, which were discounted by the same bank and matured about the time the accommodation note was given. The money was paid to Dilworth to take up these notes; he did not so use the money, but appropriated the accommodation note to their renewal. *Held*, that the bank was visited with his knowledge and with his fraudulent use of the last note.

3. McClurkan *v.* Byers, 24 P. F. Smith 405, followed.

October 8th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1875, No. 82.

This was an action of assumpsit commenced March 16th 1872, by Jackman T. Stockdale, trustee of Pittsburg Savings Bank, against William Keyes and Joseph Keyes, trading as Keyes Brothers.

The cause of action was the following note:—

"$7500.00.                    Pittsburg, September 25th 1871.

Four months after date I promise to pay to the order of Messrs. Keyes Brothers seven thousand five hundred $\frac{00}{100}$ dollars, payable at Pittsburg Savings Bank, without defalcation, value received.                    F. A. DILWORTH,

Per Loomis, Att'y."

Endorsed:—

" KEYES BROTHERS, per E. C. Keyes, Att'y.

F. A. DILWORTH, per Loomis, Att'y."

The following is the material part of the power of attorney, dated February 23d 1871, under which E. C. Keyes endorsed the note:—

" Know all men by these presents, that we, William Keyes and Joseph Keyes, partners as Keyes Brothers, have made, constituted and appointed, and by these presents do make, constitute and appoint E. C. Keyes, our true and lawful attorney for us, and in our names, place and stead, to buy and sell crude and refined petroleum ; to make contracts in writing for that purpose ; to sign, execute and deliver contracts, notes and other writings for the purposes aforesaid, and generally to act for us and in our firm name, and to transact business for us either in his name or in our names, according to his judgment and discretion, hereby giving and granting unto him, said attorney, our full and whole power and authority, in and about the premises," &c.

The Pittsburg Savings Bank, the beneficial plaintiff, was an unincorporated association, of which at the date of the note Dilworth was, and for a long time before had been, a stockholder and director.

About 1868, Joseph Keyes, William Keyes and Ezra C. Keyes formed a partnership, under the name of Keyes Brothers, for the purpose of engaging in the oil business. This firm dissolved in October 1870. In February 1871, Joseph and William Keyes formed another partnership under the same firm name. During the existence of these firms Dilworth was their commission merchant. He had offices in Pittsburg and other places ; the firm of Keyes Brothers occupied part of his office in Pittsburg ; and the business of the original and subsequent firm was conducted by Ezra C. Keyes.

In 1870 Keyes Brothers were largely indebted to Dilworth, and in payment gave him notes drawn by themselves to his order. These notes were discounted for Dilworth by the plaintiff, and were subsequently reduced and renewed by other notes similarly drawn. On the 22d of May 1871, the plaintiffs held two of these renewals ; one due on that day for $4500, and the other due June 5th for $5000. On the 22d of May, a note for $8000, precisely the same, except amount, as that in suit, was given to Dilworth, discounted by the plaintiff and the proceeds passed to his credit ; at the maturity

[Stockdale v. Keyes Brothers.]

of this note, September 25th, $500 were paid upon it, and the note in suit given in renewal of the other.   Dilworth failed November 6th 1871.   The last firm of Keyes Brothers dissolved about the same time.   The defendants alleged that they had paid the notes of $5000 and $4500 when they matured, having given the money for that purpose to Dilworth's clerk, who transacted all his business under a power of attorney, and that the other notes were given by Ezra Keyes without their knowledge or authority, for the accommodation of Dilworth; that besides the fact that the face of the note and its endorsements showed that it was such accommodation note, the fact of Dilworth being a member and director of the association affected the plaintiffs with knowledge of the character of the transaction.

The case was tried January 27th 1875, before Kirkpatrick, J.

The plaintiff having given the note and power of attorney in evidence rested.

William Keyes, one of the defendants, testified: that he never authorized any one to endorse the note with the name of his firm; that neither he nor the firm received any benefit from it; that E. C. Keyes had no power to act for the firm outside of the power of attorney; witness never received notice of dishonor; about the time the note was maturing E. C. Keyes told the firm of this note; they had not known of it before.   He and his brother mortgaged their farms, and gave E. C. Keyes money for the purpose of taking up the $5000 and $4500 notes of Keyes Brothers; Ezra had told them either that the note was due or would soon come due.

Joseph Keyes, the other partner, testified in substantially the same manner.

S. Loomis, who transacted Dilworth's business under a power of attorney, testified that the $8000 note was for the accommodation of Dilworth; that the note in suit was a renewal of that note; the proceeds of the $8000 note passed to Dilworth's credit in the plaintiff's bank; the defendants provided the money to take up the other two notes; it was given to witness to pay the notes, and "they were paid;" witness saw the notes handed over to Ezra Keyes; the notes matured at the Pittsburg Savings Bank; Dilworth had them cashed for his own benefit there; the money to take up the two notes was handed to witness by Ezra Keyes, by two checks; one for $4500 on the day the note of that amount was due; the other for $5000 on the day the other note was due.   The $4500 was deposited in plaintiff's bank to the credit of Dilworth, and the proceeds of it were "lifted" that day; the $5000 was not deposited, but paid the note of that amount; the $4500 note was paid the same day the $8000 was discounted by plaintiff's bank.

F. A. Dilworth testified that he knew that about the time the two notes were maturing the defendants had raised money by mortgage to take them up.   The $8000 note was made for his

accommodation, and he got its proceeds; when it fell due, he paid $500 on it, and the $7500 note was for the balance. The defendants then gave evidence from the books of the bank, that both the $8000 note and the $7500 note were discounted for the benefit of Dilworth; also, that on the 22d of May 1871, Dilworth was credited with $4500, and with $7744, the proceeds of the note, and was charged with $4600, leaving to his credit, at the close of the day, $7797.90.

Ezra C. Keyes testified that at the times the $4500 and $5000 notes became due he gave to Loomis, the business man of Dilworth, checks for the respective amounts of the notes; Loomis delivered the notes to witness. Witness did not himself go to the bank to take up the notes, they were taken up and handed to him; this was satisfactory to witness that they had been paid. Witness did not inform defendants that he had endorsed accommodation paper for Dilworth until after Dilworth's failure.

The plaintiff in rebuttal called John Birmingham, the cashier of his bank, who testified that there were sixty or seventy stockholders of the bank; he testified also as to the transactions of the bank in connection with the notes before spoken of. The following offers of evidence were then made:—

That the note of May 22d 1871, for $8000, was discounted by the bank that day for the purpose of renewing in part the two notes of Keyes Brothers, then held by the bank. That the note was offered and discounted for that purpose.

That on May 22d 1871 the plaintiff's bank held and owned two notes of defendants, one for $4500, due May 22d 1871, and one for $5000, due June 5th 1871, being the notes mentioned by witnesses for defendants, for which notes defendants were legally bound; that on each of these notes F. A. Dilworth was endorser; that on May 22d 1871 a note for $8000 was offered plaintiff's bank, made by F. A. Dilworth to order of Keyes Brothers, endorsed by Keyes Brothers, per E. C. Keyes, attorney, to renew the note of $4500, and in part renewal of the note for $5000; that the note was so taken by the bank, and the proceeds thereof went to lift said notes of $4500 and $5000; that when said $8000 note matured it was renewed in part by the note in suit.

To ask the witness now on the stand whether the note of $4500, due May 22d 1871, was lifted with the proceeds of the $8000 note spoken of by defendants' witnesses.

The minutes of the bank of May 22d 1871, identified by the witness on the stand as the minutes of the plaintiff company, which are as follows, to wit: "Monday, May 22d 1871, the board met at 11½ o'clock, A. M., present, Stockdale, Hill, Goehring. F. A. Dilworth's note, four months, for $8000, endorsed Keyes Brothers, to renew note of $4500, due to-day, and $5000 note of Keyes Brothers, due June 2d and 5th, were all passed for discount."

[Stockdale *v*. Keyes Brothers.]

The offers were all objected to by the defendants, rejected by the court, and several bills of exceptions sealed.

The following are points of plaintiff with their answers:—

1. If the jury should find from the evidence that in November, A. D. 1871, the defendants were informed by E. C. Keyes that he had endorsed in their names the note in suit, and it was then known to defendants that said note was held by the plaintiff's bank, it became the duty of defendants to disavow the act of their agent and notify the bank of the same.

2. If the defendants received in the early part of November, A. D. 1871, notice that the note in suit was then held by plaintiff's bank with their name endorsed thereon, per E. C. Keyes, acting for them, and having such knowledge, failed to disavow and disclaim the act of their agent until February, A. D. 1872, it was an acquiescence which prevents them from now claiming that the endorsement was unauthorized.

3. The defendants when they received notice that E. C. Keyes, their attorney, had in their name endorsed the note in suit, and that it was owned and held by the plaintiff's bank, were bound within a reasonable time to disavow the act of their agent and notify the bank of the same; and if the jury believe they failed to do so, the plaintiff is entitled to recover. .

These points were refused without qualification.

4. If the jury believe that Keyes Brothers and F. A. Dilworth had business transactions with each other, and mutually accommodated and endorsed for each other, and this fact was known to the defendants and plaintiff, then even should the jury find that the endorsement of the note in suit was merely for the accommodation of F. A. Dilworth, the plaintiff may recover.

Answer. "Affirmed."

5. The notice, if any, to Dilworth as to the nature of the endorsement on the note in suit, was not notice to the plaintiff's bank.

Answer. "Refused. On the contrary, we instruct you that notice to or knowledge of Dilworth touching the nature of the endorsement, was notice to the plaintiff's bank. It being evident from the unquestioned testimony in the cause, that the plaintiff's bank was an unincorporated partnership, and hence Dilworth could not put his partnership in a better position than he himself held, and could not transfer to his partners for the benefit of the whole firm a right he himself had not to recover upon the note, and then unite with them in maintaining this suit."

6. Under the circumstances of the case, the fact of Dilworth being the last endorser and Loomis presenting the note in suit to the plaintiff's bank, was not notice that the endorsement was for the mere accommodation of Dilworth.

Answer. "Refused; subject, however, to the answer in affirmative of the plaintiff's fourth point. If they find the facts as suggested in that point, then the plaintiff would be entitled to a verdict, no

[Stockdale *v.* Keyes Brothers.]

matter whether the endorsement was an accommodation endorsement or was not."

The following is defendants' fourth point with the answer :—

If the jury find from the evidence that the note for $8000, dated May 22d 1871, and the note in suit for $7500, were respectively made and signed by F. A. Dilworth, per Loomis, attorney, "payable to the order of Keyes Bros., and were endorsed Keyes Bros., per E. C. Keyes, attorney," for the accommodation of Dilworth, and were then endorsed "F. A. Dilworth, per Loomis, attorney," and the paper in that form was presented by Dilworth, the second and last endorser, or by Loomis, his agent, to the plaintiff's bank for discount, the bank was visited with notice that the endorsement of the firm name of Keyes Bros. was for Dilworth's accommodation, and the verdict should be for the defendants.

"Affirmed; subject to the qualification of the answer affirming plaintiff's fourth point, being that if you find that the parties were in the habit of mutually accommodating each other by endorsements, which fact was known to defendants and plaintiffs as well, then plaintiffs were entitled to a recovery, whether the endorsement in this instance was an accommodation endorsement or was not."

The verdict was for the defendants.

The plaintiff took a writ of error and assigned for error :—

1–4. Rejecting plaintiff's offers of evidence.

6–10. Refusing plaintiff's points.

11. Affirming defendants' points.

*D. T. Watson,* for plaintiff in error.—As to the bank being responsible for the knowledge and acts of Dilworth, his power was by the mode in which the firm did business : Parsons on Partnership 95, 99, 100, 101, note *a* 172, 175 ; Woodward *v.* Winship, 12 Pick. 430 ; Livingston *v.* Roosevelt, 4 Johns. 278. Knowledge of the mode of transacting partnership business may be inferred from circumstances that would put a prudent man upon inquiry : Collyer on Partnership, sect. 387, note 1. It was the duty of the defendants to notify the bank that their agent's act was unauthorized : Story on Agency, sect. 255 ; Bredin *v.* Dubarry, 14 S. & R. 30.

*M. W. Acheson,* for defendant in error.—Authority to draw and endorse does not justify an agent to make accommodation paper for other parties : 1 Parsons on Bills 107 ; Wallace *v.* Branch Bank, 1 Ala. 565. Knowledge of one partner will affect all the others : Parsons on Partnership 195, 196 ; Collyer on Partnership, sect. 441 ; McClurkan *v.* Byers, 24 P. F. Smith 405.

Judgment was entered in the Supreme Court, October 14th 1875,

PER CURIAM.—We think there was error in the rejection of the evidence contained in the first four assignments of error. But these errors were not substantial, having become immaterial in the

[Stockdale *v.* Keyes Brothers.]

actual state of the case; for, supposing the evidence to be before the jury, the court would have been compelled to instruct them, that the relation of F. A. Dilworth as a partner in this private banking concern, and necessarily an interested plaintiff, would prevent the bank from being a bonâ fide holder, protected against the improper use of the $8000 note made by Dilworth. Whether Dilworth was empowered to receive payment of the notes of $4500 and $5000 is not very material, for he knew that the defendants had paid the money to take up these notes, and that their former agent, E. C. Keyes, had no right to give the $8000 note, and suffer him to use the money paid to take up the two notes of $4500 and $5000. He knew that the $8000 note was not rightfully used to renew the two notes, which the defendants themselves did not intend to renew, and had furnished him the money to pay off. Being a partner with the plaintiff, they were visited with his knowledge, and consequently with his fraudulent use of the $8000 note. The case is governed by that of McClurkan *v.* Byers, 24 P. F. Smith 405.

Judgment affirmed.