## Adams, Appellant, *v.* Ashman.

*Promissory notes—Fraud—Failure of consideration—Renewals.*

If the giving of a promissory note was induced by fraud, or if there was failure in the consideration all subsequent renewals of the note are open to the same defense.

*Promissory note—Fraud—Partnership—Knowledge of partner.*

The knowledge of a member of an unincorporated banking firm of the facts relating to the issue of a note held by the firm, is knowledge to the firm, and prevents it from being considered an innocent holder.

*Promissory note—Fraud—Estoppel.*

The maker of a promissory note is not estopped from setting up the defense of fraud in a suit on the last of a series of renewal notes, because of the fact that he paid the discount upon the several renewals without at the same time making any protest as to the fraud which induced the giving of the original note, where it appears that the discounting of the various notes given in renewal was not done at the instance of the maker, nor in any way for his benefit, but wholly in the interest and at the suggestion of the payee of the note.

*Promissory note—Fraud—Evidence.*

In an action upon a promissory note a verdict and judgment for the maker will be sustained where the evidence for the maker, although contradicted, tends to show that he gave the note for the purpose of enabling the payee to buy stock in a corporation, that the payee made various false representations as to the value of the stock, and that none of the stock had in fact ever been delivered to the maker.

Argued April 21, 1902. Appeal, No. 202, Jan. T., 1900, by plaintiff, from judgment of C. P. Huntingdon Co., Dec. T., 1899, No. 14, on verdict for defendant, in case of Thomas H. Adams and C. P. Dull, trading as Central Banking Company, v. Sigel Ashman. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit on a promissory note.

At the trial it appeared that the note in suit was the last of a series of renewal notes. The defense was that the maker had been induced to give the original note in order to enable L. B. Doty to purchase stock of the Bedford Springs Company; that Doty had made false representations as to the value of the stock, and as to the condition of the company, and that as a matter of fact the defendant had never received any of the stock.

Plaintiff presented these points:

3. If the testimony of the defendant be true that L. B. Doty was engaged in perpetrating a fraud on him, and the note of which the note in suit was a renewal was procured from him by fraudulent representations, that fact would be sufficient to vitiate the note in any hands except those of an innocent holder. To obtain the fruits of that fraud it was necessary to have the note discounted by persons having no knowledge of the fraud which surrounded its inception and vitiated it, and this brings the plaintiffs, who, according to the testimony of the defendant, did discount it, within the exception to the general rule that notice to a partner or agent is notice to his copartners or principal, and raises a clear presumption that L. B. Doty would not communicate the fraud, when he is acting for himself and in his own interest and adversely to his principal or copartners. The plaintiffs are therefore innocent holders for value without notice before maturity. *Answer:* Refused. [3]

4. The first note for the sum of $5,000 made by Sigel Ashman to the order of L. B. Doty and indorsed by said Doty, and discounted by the Central Banking Company, is not a renewal of the note given by Sigel Ashman, payable to himself and by him indorsed to L. B. Doty and discounted by the Reedsville Bank, for the reason that the parties to the last named note are not the same as the parties to the first named note, nor were the notes discounted at the same bank. There is no evidence to show fraud at the inception of the note discounted by the Central Banking Company, of which the note in suit is a renewal, or that it was procured from Sigel Ashman by fraud of L. B. Doty or anybody else, or that he was induced to give it by fraudulent representations. *Answer:* Refused.

5. L. B. Doty having assigned his interest in the partnership of plaintiff's bank as collateral security for a loan, prior to the perpetration of the alleged fraud on the defendant, notice to him would not be notice to his partners. *Answer:* Refused. [5]

6. Under all the evidence the verdict must be for the plaintiff. *Answer:* Refused. [6]

7. The only evidence of the fraud or misrepresentation by which the note dated February 12, 1892, was procured from the

defendant, and the only evidence of the fraud surrounding the transaction from which this suit arises, being the testimony of the defendant, Sigel Ashman himself being an interested witness, uncorroborated, and that testimony having been contradicted by L. B. Doty, a disinterested witness in every material part, there is not sufficient evidence of fraud surrounding the making of the note of February 12, 1892, or subsequent to it, to carry the case to the jury. *Answer :* Refused. [7]

Defendant presented these points :

1. If the jury find that L. B. Doty made misstatements of a material fact, which defendant believed to be true, and relied upon in giving the original note, of which the one in suit is a renewal, and which induced the giving of the note, and they further find that at the time L. B. Doty was a partner in the banking business with the plaintiff and continued so to be, when the original note, or any renewal of it was discounted, then they must find a verdict for the defendant. *Answer :* Affirmed. [8]

2. If the jury find that L. B. Doty told the defendant, at the time the original note was given, that he had called to see his uncle, Isaac Taylor, and that his said uncle had said that the stock was a good thing, and that if he was not so old he would take some himself, and that he had told said Doty to go to the defendant and tell him from him that the stock was a good thing and that he (Isaac Taylor) advised him, the defendant, to subscribe for some of it. And if they believe that the defendant believed the statements of the said L. B. Doty, and that they were false statements, and if they further find that at the time L. B. Doty was a partner in the banking business with the plaintiff when the note was discounted, then they must find a verdict for the defendant. *Answer :* Affirmed. [9]

3. If the jury find that L. B. Doty agreed not to negotiate the note of defendant unless a controlling interest in the Bedford Springs Company was secured by the said L. B. Doty and his associates, or by the syndicate he was promoting ; and this controlling interest was never secured ; and they also find that at the time the note was obtained from the defendant that the said L. B. Doty was a partner with the plaintiffs and continued so to be until after the note was discounted, the verdict of the jury must be for the defendant. *Answer :* Affirmed. [10]

11. If the jury believe that at the time the note, of which the note in suit was a renewal, was discounted by the Central Banking Company, that the said L. B. Doty was a member of the Central Banking Company, then the plaintiffs are not bona fide holders, for value, but took the note subject to all the equities and defenses the defendant had against the said L. B. Doty. *Answer:* Affirmed. [11]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (3–11) above instructions, quoting them.

*Thomas F. Bailey* and *H. H. Waite*, for appellants.—A renewal is an extension of credit, an agreement not to require to pay the due note by other funds, but for a consideration to extend the time of payment of the old debt; the old debt not being paid except in form, on new fund passing into or out of the bank, lives again in the new because by an actual payment it has never been ended: Hartley v. Kirlin, 45 Pa. 54.

The defendant having paid the discount on the note of August 15, 1892, and upon the several renewals thereof to the note in suit, and remaining silent as to any misrepresentations made by Doty to obtain the note of February 12, 1892, is now estopped from setting up such fraud as a defense: Edgar v. Kline, 6 Pa. 327 ; Humphrey v. Tozier, 154 Pa. 410.

If Doty had discounted or renewed at plaintiff's bank a note vitiated by fraud, he perpetrated the fraud on both the makers of the note and upon his copartners. "Where one member is committing a fraud on his copartners, notice on his part is not equivalent to notice to them:" 1 Lindley on Partnership, page 217; Gunster v. Scranton Illuminating Heat & Power Co., 181 Pa. 328; Stockdale v. Keyes Bros., 79 Pa. 251.

There was merely oath against oath. This is not sufficient: Brawdy v. Brawdy, 7 Pa. 159; Halberstadt v. Bannan, 149 Pa. 51; Tidioute & Tiona Oil Co. v. Shear, 161 Pa. 508; Phillips v. Meily, 106 Pa. 544; Thomas & Sons v. Loose & Co., 114 Pa. 35; Jackson v. Payne, 114 Pa. 67; North v. Williams, 120 Pa. 110 ; Mifflin Co. National Bank v. Thompson, 144 Pa. 393.

*Thomas H. Murray, W. Mc. K. & R. W. Williamson* and *W.*

*H. & J. S. Woods*, for appellee.—The original taint attaches to all consecutive obligations, or securities growing out of the original vicious transaction, and none of the descendant obligations, however remote, can be free from it if the descent can be traced: Campbell v. Sloan, 62 Pa. 481; Reap et al. v. Battle, 155 Pa. 268; Montague v. McDowell, 99 Pa. 265; Shutt v. Evans, 109 Pa. 625; Gault v. McGrath, 32 Pa. 392.

Knowledge of one member of a firm is knowledge of all: Stockdale v. Keyes Bros., 79 Pa. 257; McClurkan v. Byers, 74 Pa. 405.

One cannot have a security and repudiate the contract by which it is obtained: Jones v. National Building Association, 94 Pa. 215; McClurkan v. Byers, 74 Pa. 405–414; Powell v. Waters, 8 Cowen (N. Y.), 669; Quinn v. Fuller, 61 Mass. 224; Laird v. Campbell, 100 Pa. 159.

OPINION BY MR. JUSTICE POTTER, October 13, 1902:

The question which arises at the outset in this case is, whether the relations between the parties to this action are such as to admit of inquiry into the consideration for the note in suit.

The defenses set up were, first, fraudulent misrepresentations which induced the making of the note by the defendant; and second, an entire failure of consideration. These defenses, if proven, would undoubtedly be good as between the immediate parties; but they are not such as can be allowed to prevail in an action brought by the purchaser of an instrument for value, without notice. Does the plaintiff stand in that position?

The particular note upon which this suit was brought, was given by Sigel Ashman to L. B. Doty, or order, for the sum of $5,000, under date of August 17, 1893, payable in ninety days. It was indorsed by Doty to the plaintiff, the Central Banking Company, a partnership, of which Doty was at that time, and had been for several years, a member. This note was the fifth in a series of renewals, in all of which the defendant Ashman and L. B. Doty were the immediate parties. The original note of the series was given upon February 12, 1892, differing slightly in form from the others, in that it was drawn by Sigel Ashman to his own order, and by him indorsed, and given to L. B. Doty. After receiving the note, Doty brought it to the office of the plaintiff, and showed it to the cashier. It was not

at that time discounted by the plaintiff firm, but was handled by it, and forwarded to the Reedsville National Bank. The note was, however, payable at the office of the Central Banking Company, at Mt. Union, Pennsylvania, and shortly before its maturity, Doty wrote to the defendant, asking him to see to the note, and if not convenient for him to pay it, to have it renewed, and offering to indorse. The cashier of the plaintiff company also wrote to the defendant with regard to this first note, urging prompt payment, and enclosing a renewal note, payable to the order of Doty, and offering to renew for three months.

In so far as the record shows, the Reedsville National Bank had no communication whatever with the defendant, but acted only at the instance of the plaintiff in discounting this first note, and the subsequent renewals were made by the plaintiff, with the indorsement of Doty. Of course the relation of the plaintiff to the paper was fixed by the knowledge which it had of the condition under which the first or original note of the series was issued. If there was fraudulent misrepresentation which induced its issue, or if there was failure in the consideration for it, all the subsequent renewals were open to the same defense : Campbell v. Sloan, 62 Pa. 481.

We are not without authority in this state as to the effect upon a partnership of the knowledge of one partner concerning the facts connected with the issue of a note. In the course of the opinion in National Bank of Bedford v. Stever, 169 Pa. 581, Justice GREEN refers to the fact that in Stockdale v. Keyes, 79 Pa. 251, " we held that the knowledge of a member of an unincorporated banking firm, of the facts relating to the issue of the note held by his firm, was knowledge of his firm, and prevented them from being considered as innocent holders."

The same principle was more fully elaborated, and the reasoning upon which it is founded, clearly set out in McClurkan v. Byers, 74 Pa. 405.

Following the line of these decisions, we are impelled to hold that the knowledge of Doty as to the origin of the note, and the circumstances of its creation, must be imputed to his fellow members in the partnership, and that the learned trial judge correctly instructed the jury that the plaintiff was not in law an innocent holder, but that the note in its hands was subject

to all the defenses to which it was liable in the hands of Doty, to whom it was immediately given.

It is suggested in the argument of counsel for appellant, that the defendant is estopped from setting up the defense of fraud at this time, because of the fact that he paid the discount upon the several renewals, without at the time making any protests as to the misrepresentations which induced the giving of the original note. We cannot adopt this suggestion. The discounting of the various notes given in renewal was not done at the instance of the defendant, nor was it in any way for his benefit; but it was wholly in the interest, and at the suggestion of Doty.

Holding as we do that there was at least constructive notice to the plaintiff, by reason of the actual knowledge of Doty, who was one of its members, there is no room for the operation of the principle of estoppel. In order that it should apply, the utmost good faith is required from both parties. When the holder of an instrument is aware of any illegality connected with it, he cannot be protected by any such claim. We cannot attempt to define the exact limits within which the knowledge of Doty should be imputed to his partners, but it is sufficient to say that if the evidence of the defendant be accepted as true, the manner in which the note was handled, and the conduct of the plaintiff's cashier in receiving a commission for the sale of stock, to be paid for out of the proceeds of the note, did not exhibit upon the part of the plaintiff that entire good faith, which equity exacts of one who would deprive a defendant of the right to set up the true condition of affairs as a defense.

The note of February 12, 1892, was drawn by Sigel Ashman to his own order, and then indorsed by him and transferred to L. B. Doty. It is undisputed, however, that the real relations between Ashman and Doty were such as to make them immediate parties to the note. In so far therefore as the controversy between them is concerned, any defense sufficient to prevent the enforcement of an ordinary contract, will prevail. Lack of consideration, therefore, would be sufficient. It is admitted that no money consideration was given. The testimony of the defendant is that Doty obtained the note under the promise that it would only be used by him for the purpose of buying stock in the Bedford Springs Company from other persons;

that if he did not succeed in getting options on a majority of the stock, no stock was to be bought for the defendant, but the note was to be returned to Ashman. He testifies also that Doty made various representations as to the value of the stock, and as to its earning capacity and the payment of dividends, and various other matters, all of which were afterwards found to be false. This evidence was contradicted by Doty, but he, while contending that the consideration for the note, was the sale of stock, admitted that none was delivered to Ashman at the time the note was made, nor could he say that any of the stock was ever delivered to Ashman. The testimony was in many respects contradictory, but the credibility of the witnesses was for the jury. If they believed the evidence of the defendant, there was ample to justify a finding of misrepresentation upon the part of Doty, and that the purpose for which the note was executed was never fulfilled, and that the contemplated consideration for the note, was never delivered, and that the promise made when the note was executed, as to its use, was subsequently violated.

We cannot regard this case as being merely that of oath against oath, with the persuasive evidence of the note, in favor of the plaintiff. It is rather one in which the attending facts and circumstances speak in favor of the defendant, and these may well be regarded as the equivalent of another witness. The peculiar circumstances under which the note was procured from the defendant; the fact that Ashman and Doty were strangers, and were introduced by Bell, the cashier of the plaintiff company, who was paid a commission upon the sale of the stock; the representations made as to the financial condition of the Bedford Springs Company, and as to the profits of the business; the interest which Doty had in securing for himself a controlling interest in the stock, and the benefits which would accrue to him by reason thereof; the correspondence between Doty and the defendant as bearing upon the representations made when the note was given, and as inducements to him to sign the various renewals; the fact that no stock was ever delivered by Doty to the defendant; all these and various other matters appearing in the testimony, were for the consideration of the jury as tending, at least, to corroborate the defendant, and they may have been potent in convincing the jury that his version of the affair was the true one.

As all the assignments of error relate to the refusal of the trial court to give binding instructions in favor of the plaintiff, none of them can be sustained. We see no sufficient reason for complaint by the plaintiff, as to the manner in which the case was submitted to the jury.

The judgment is affirmed.