## Lang v. Anton

*William Speakman, Jr.,* for plaintiffs.
*Vincent J. Grogan,* for defendants.

SWEET, *P.J.,* August 8, 1983—On or about May 26, 1978, plaintiffs James E. Lang and Donna Jean Lang purchased real estate with improvements located in Amwell Township, Washington County, Pa.

Plaintiffs suffered in excess. [of] $74,000 in damage as a result of the landslide-prone condition of the real property.

Plaintiffs obtained partial financing for this real estate transaction through Mellon Bank. Defendant Richard P. Anton, Esq., was retained to conduct the title examination and to provide the necessary legal services related to this real estate transaction. One of the documents involved in the title examination, the recorded subdivision plan, contained the following warning:

"Note: The hillside may be susceptible to sliding. Therefore, great care should be taken during home construction activities."

Defendant either didn't see the warning or didn't feel it was his responsibility to advise plaintiffs of its

existence. In August, 1980, the hillside began to slide and plaintiffs had to move their home to prevent it from sliding down the hill.

Plaintiff sued in tort generally and for negligent misrepresentation and in contract alleging a third-party creditor beneficiary relationship. Defendant demurred to all counts, moved for more specific pleading and took other minor miscellaneous umbrage to the complaint. The demurrer is the serious part of the preliminary objections.

We, therefore, have presented to us the question of whether or not defendant Anton is liable to the clients, Lang et ux, for failing to advise them of the notation of the recorded plan.

It is well-settled law that the knowledge of the agent is knowledge of the principal. National Bank of Bedford v. Stever, 169 Pa. 574, 32 Atl. 603 (1895). Agency law states that the agent has a duty to disclose all material information to his client, Restatement (Second) of Agency § 381:

"Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person."

The duty to disclose material information can also be derived from the lawyer's fiduciary obligations. R. Mallen & V. Levit, Legal Malpractice § 96, cited in 128 U.Pa. L. Rev. 41 (1979). In the section entitled "Duty of the Lawyer to a Client," is stated that:

"A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations. A lawyer ought to initiate his decision-making process if the client does not do so."

Had plaintiffs been warned of the dangers expounded on the recorded plan, they could have investigated the measures, if any, that may have been taken by the builder to correct or offset the impact of the condition of the land on the improvement.[1]

It was defendant's duty to examine the recorded subdivision plan. The defense alleges that an attorney has no duty to "see" anything contained in this record that does not specifically and directly relate to title itself. This is analogous to asserting that a doctor who has been hired to set a broken leg has no duty to "see" a malignant growth along the fracture line or, if so, he has no duty to mention its existence to the patient.

Since the argument of this case in May, the Supreme Court of Pennsylvania has spoken to the subject. Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983), appears in full in the advance sheet of June 24, 1983. The Supreme Court in a closely split opinion reversed the Superior Court in part and remanded.

The majority opinion by Mr. Justice Hutchinson says several things that are important for our purposes. First, he points out that an individual who has an attorney/client relationship may sue the attorney for malpractice under either a trespass or assumpsit theory. In our case, the privity considerations, which make Guy v. Liederbach, supra, difficult, are not pertinent. There doesn't seem to be any real doubt that Anton was searching the title for the Langs in connection with their purchase of the land. He was paid by them, although furnished and approved by the mortgagee, Mellon National Bank.

---

1. In fact, in the action by plaintiffs against the seller of the subject real estate, the seller is asserting that plaintiffs had constructive notice of this warning.

Guy v. Liederbach, supra, factually involves a suit wherein the beneficiary of a will sues the lawyer for professional malpractice when he acted in such a way that plaintiff, because she was a witness to the will, could not collect her legacy. Our case, of course, is different. The party/plaintiff here is in privity with defendant, who was paid by plaintiff. In Guy, supra, she could not have an attorney specifically undertake for her the writing of a testator's will. She was only a third-party beneficiary and cannot be a tort plaintiff. The Supreme Court, on page 750, said this:

"Thus we retain the requirement that plaintiff must show an attorney-client relationship or a specific undertaking by the attorney furnishing professional services, as in Lawall, as a necessary prerequisite for maintaining such suits in trespass on a theory of negligence."

However, the ultimate statement of Guy, supra, for our purposes is:

"Overarching all of appellants' arguments is the basic policy that allowing suits such as appellee's would perhaps lower the quality of legal services rendered to clients because of attorneys' increased concern over liability to third persons, and certainly make them much more expensive. See Ultramares Corp. v. Touche, supra. We cannot accept the proposition that insuring the quality of legal services requires allowing as limited a number of persons as possible to bring suit for malpractice. However, we are not insensitive to the policy concerns raised by appellants, and accordingly refuse to adopt the 'California rule' allowing actions in negligence or contract actions which in fact rely on negligence criteria. Nevertheless, we feel persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to proper-

ly draft the instrument should not be left without recourse or remedey as they would if appellants' argument were wholly adopted. We believe that a cause of action in assumpsit in accord with the principles of Restatement (Second) of Contracts, § 302 (1979), meets the legitimate needs of appellee and those like her, while still addressing the legitimate concerns voiced by appellants."

The analogy to the case at bar is plain. If a lawyer by error causes his client loss, he may be sued in trespass (if there be privity) and in assumpsit if there is either a third-party beneficiary contract or direct contract.[2]

---

2. Paragraph 10 of the complaint in negligence repeated by reference in the contractual part of the suit says:

"10. The negligence of the defendant consisted of:

a. Failing to conduct the title examination with due care in that he or his agent or employee:

(1) Failed to examine the recorded plan of the Gardiner subdivision, the property being one of several lots in said subdivision, which was recorded in the Recorder's Office of Washington County, Pennsylvania, in Plan Book 16, page 49, recorded on May 25, 1978; or

(2) If said record was examined the defendant failed to observe the warning imprinted on said record, i.e.;

'Note: The hillside may be susceptible to sliding. Therefore great care should be taken during home construction activities.'; or

(3) If defendant did note the warning, he failed to advise the plantiffs of the danger and the risk involved in purchasing a home constructed on landslide-prone property.

b. Failing to exercise ordinary skill and diligence in uncovering and/or disclosing to the plaintiffs the defect in the property that they planned to purchase while he knew or should have known of their reliance on his investigation and representation that all was in order with respect to the property."

We must assume the truth of these well-pleaded averments for *this* purpose, ruling on a demurrer.

If we accept the well-pleaded facts as true, there is enough charged here to make out a case either in contract or negligence. Allstate Insurance Co. v. Fioravanti, 451 Pa. 108, 299 A.2d 585 (1973).

"Under present Pennsylvania law, an individual who has an attorney-client relationship may sue his attorney for malpractice under either a trespass or assumpsit theory. See 1 Standard Pennsylvania Practice 2d §4:66 and cases cited therein. In dicta, Lawall v. Groman, supra, relying on the principle that one who undertakes to perform a service for another, even without reward, is bound to exercise reasonable care and can be held responsible for misfeasance, though not for nonfeasance, stated that a third party could bring suit against an attorney in a negligence action if the attorney knew that the third party 'was relying on him in his professional capacity.' 180 Pa. at 540, 37 Atl. 98 [1897]." Guy, supra.

The opinion goes on to show why Lawall v. Groman, 180 Pa. at 532, doesn't control now.

Now that the whole Guy, supra, litigation is spelled out, it is easier for us to cope with this.

We should also note that the issue is not whether an attorney must guarantee the stability of the land involved in the title search but rather whether an attorney has a duty to warn his client of dangers apparent from recorded documents materially involved in the title search.

An action asserting legal malpractice may be brought in assumpsit, on the theory that the attorney by failing to follow specific instructions committed a breach of contract; or in trespass, on a theory that the attorney failed to exercise the standard of care that he was obliged to exercise. Duke & Co. v. Anderson, 275 Pa. Super. 166, 418 A.2d 613 (1980).

The preliminary objections also contains this item:

"4. Defendant moves to strike off paragraph four of the plaintiffs' complaint as being scandalous and impertinent to this matter."

Paragraph four of the complaint says:

"4. The defendant has had extensive experience in implementing real estate transactions and facilitating real estate closings, having been the closing officer in literally thousands of transactions."

We are at a loss to understand this particular objection. An averment in a pleading is scandalous if it unnecessarily avers something contra bonos mores. For instance, a complaint in trespass per quod servitum amisit might be scandalous if it dealt for several pages with sexual foreplay in acute gynecological detail. A complaint may be scandalous if it reaches far out of the ambit of the cause of action to aver some illegal or immoral conduct of the defendant. Here defendant's knowledge and skill in title examination is at the very hub of the cause of action. The paragraph does not defame defendant. This objection is hence rejected without more.

Paragraph "A" through "J" is properly subject to criticism as being unduly prolix and peripheral. Any merit there may be there is strangled in the luxuriance of the verbage.

Believing, as we do on the central issue of this matter, that plaintiff has successfully set forth a cause of action in trespass and also in assumpsit, under the most recent decision of the Supreme Court of Pennsylvania, we are obliged to dismiss the preliminary objections and grant 20 days for reply on the merits. Any bits of value there might be in preliminary objection six can be met by appropriate discovery.