# O'Malley, Appellant, *v.* Olyphant Borough.

*Municipalities—Boroughs—Increase of debt.*

A contract by a borough to pay for a portion of the cost of a sewer cannot be enforced, where it appears that the contract if enforced would result in an increase of indebtedness to an amount exceeding two per centum upon the assessed valuation of property in the borough, without the assent of the electors.

*Boroughs—Increase of debt—Bill in equity by nonresident taxpayer—Laches.*

Where an ordinance and a contract for the construction of a sewer in a borough do not impose an absolute liability on the borough for the cost of the sewer, but only a possible liability if viewers should assess benefits against the borough, a nonresident taxpayer who did not see the work during its progress, and did not learn of the intention to construct the sewer until about the time of its completion, is not guilty of laches in filing a bill in equity four months after the completion of the sewer and seventeen days after viewers have filed their report assessing benefits against the borough, to restrain the borough from paying such assessments, on the ground that the ordinance and contract involved an illegal increase of debt.

*Municipalities—Powers of officers—Contracts—Notice.*

All persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or of its officers to make the contract; and a contract beyond the scope of the corporate power is void, although it be under the seal of the corporation.

Argued Feb. 25, 1901. Appeal, No. 195, Jan. T., 1900, by plaintiff, from decree of C. P. Lackawanna Co., May T., 1899, No. 2, dismissing bill in equity in case of Charles P. O'Malley *v.* Borough of Olyphant, Stephen Flanagan and Patrick O'Horo. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Reversed.

Bill in equity for an injunction. Before Edwards, J.

The facts are fully set forth in the opinion of the Supreme Court.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*Everett Warren,* of *Willard, Warren & Knapp,* for appellant.— The plaintiff was not guilty of laches: McQuiddy v. Ware, 20 Wall. 14; Lindsay Petroleum Co. v. Hurd, L. R. 5 Privy

Council Appeal Cases, 239; Erlanger v. New Sombero Phosphate Co., L. R. 3 Appeal Cases, 1218 ; Penna. R. R. Co.'s App., 3 Walker, 454; Rennyson v. Rozell, 106 Pa. 407 ; Penna. R. R. Co.'s App., 125 Pa. 189; Mahaffey v. Ferguson,. 156 Pa. 156 ; Buck v. Buck, 195 Pa. 373 ; Tash v. Adams, 64 Mass. 252.

All persons contracting with a municipal corporation, must; at their peril, inquire into the power of the corporation or its officers to make the contract : Nankivil v. Yeosock, 7 Kulp, 518 ; Wimer v. Poor of Worth Twp., 104 Pa. 317 ; Appeal of the City of Wilkes-Barre, 109 Pa. 554; Borough of Millerstown v. Frederick, 114 Pa. 435.

*F. M. Lynch*, for appellees.—If a party is guilty of laches or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief : Kerr on Injunctions, *23, *123, *184, *278, *319, *372, *484 ; 2 Story on Equity Juris. sec. 1520 ; Planet Co. v. St. Louis, etc., Ry. Co., 22 S. W. Repr. 616 ; Tash v. Adams, 64 Mass. 252; Fuller v. Inhabitants of Melrose, 83 Mass. 166.

OPINION BY MR. JUSTICE MESTREZAT, March 11, 1901 :

By a contract dated September 12, 1898, Flanagan and O'Horo agreed with the borough of Olyphant, in Lackawanna county, to construct a sewer in the first sewer district of said borough, in accordance with the provisions of an ordinance approved July 28, 1898, and in conformity with the terms of said contract. The work was to be completed before December 1, 1898.    The compensation to the contractors was to be $1.75 per lineal foot, payable from moneys collected by virtue of assessments upon the properties benefited, except such portions as might be finally assessed upon the borough by the viewers appointed for the purpose of assessing the costs of said sewer.    The agreement contained the following provision : "This contract is let subject to the proceedings for the assessment of the cost of said sewer now pending, and in case the project should be abandoned by the borough before any work is done or the proceeding should be set aside by a legal process, then there shall be no liability upon the part of the said borough, by virtue of the entering into this contract. "    The construction of the sewer was completed, as found by the court, in November, 1898.

Viewers were appointed by the court of common pleas of Lackawanna county to assess the costs and expenses, damages and benefits incurred by the construction of the sewer, and on March 13, 1899, they made their report to the court, in which an assessment of $2,603.53 was laid upon the borough of Olyphant.

The plaintiff is the owner of real estate in Olyphant borough, and a nonresident taxpayer of said borough. He filed this bill on March 30, 1899. He avers, inter alia, that the ordinance authorizing the contract for the construction of the sewer and the contract itself are illegal and void for the reasons therein set forth, among which is that the ordinance and contract will increase the indebtedness of the borough beyond the constitutional limit. The bill prays for an injunction restraining (1) the defendants from further proceeding with the construction of the sewer, and (2) the defendant borough from issuing any warrants and making any payments to the contractors on account of the construction of the sewer.

The answer denied that the ordinance and contract were illegal and void, and admitted the assessment upon the borough, but denied that it was an illegal increase of the indebtedness of the borough, and averred that the contractors had constructed the sewer in its entirety in accordance with the terms and provisions of the ordinance and contract. It was further alleged that the plaintiff knew of the contemplated erection of the sewer, that the contract had been let for its construction and made no effort to restrain the defendants from constructing it until it had been fully completed, and that the contractors had expended a large sum of money in constructing the sewer, and that, therefore, the plaintiff was estopped from restraining the payment of the amounts due the contractors by reason of his conduct. The answer also denied that the plaintiff had a legal right to maintain the bill, and averred that he had an adequate remedy at law.

The court below refused the injunction and dismissed the bill on the ground that the plaintiff was guilty of laches and was therefore not entitled to relief in a court of equity.

The learned trial judge says in his opinion "that many of the irregularities complained of in the bill exist in this case," and then proceeds to find the following facts:

1. An ordinance was passed by the borough of Olyphant June 6, 1898, providing for the building of a sewer in a certain section of the borough. Another ordinance was passed July 28, 1898, for the same purpose. The latter ordinance differed from the first in some of its terms. When the bill in this case was filed, neither ordinance had been recorded upon the ordinance book. They were so transcribed subsequent to June, 1899. The plans and specifications referred to in the first ordinance were used and considered in connection with the second ordinance. Both ordinances were approved by the burgess. The contract to build the sewer was let to Flanagan and O'Horo in accordance with the provisions of the ordinance of July 28, 1898.

2. The contract to build the sewer was let to Flanagan and O'Horo, September 12, 1898. The resolution awarding the contract was not transcribed in the ordinance book. The ordinance provided that the advertisements for bids should not be made before the report of the viewers was approved by the court. This provision was not regarded by the council. The viewers' report was confirmed nisi March 13, 1899. The plaintiff in this case filed exceptions to the report. These exceptions have not yet been disposed of. The contract was let " subject to the report of viewers."

3. By admission of counsel for defendants it appears that the indebtedness of the borough in 1898, exceeded two per cent of the assessed valuation. The borough's share of the cost of building the sewer is $2,603.53.

It is apparent the first prayer of the bill, that the defendants be restrained from further proceeding with the construction of the sewer, cannot be granted for the all-sufficient reason that the sewer had been entirely constructed before the bill was filed. The remaining question for consideration arises on the second prayer, that the borough be restrained from making any further payments to the contractors on account of the money due them for the erection of the sewer in pursuance of their contract. The learned trial judge refused the relief asked for in this prayer, and on the ground of laches, denied the right of the plaintiff to invoke the aid of a court of equity to enjoin the borough from making full payment of the money due the contractors.

From the evidence in the case and the facts found by the

trial judge, it is evident that the municipal authorities of Olyphant borough gave little heed to the requirements of the constitution and laws of the commonwealth in the action taken by them for the construction of the sewer and in making provision for the payment of the expenses incident thereto. So true is this, that when the legality of their proceedings is challenged by a taxpayer, they are compelled practically to admit their illegal action and to take refuge under a plea that does not sustain their conduct but denies his right to assail it. Such official conduct on the part of the municipal officers should not be tolerated, much less sanctioned, and should receive the severest condemnation.

Aside from the many " irregularities " found by the court below to exist in the action of the municipal authorities, participated in at least to a certain extent by the contractors, is a clear and distinct violation of the constitution of the commonwealth. Article 9, section 8 of that instrument is as follows : " The debt of any borough . . . . shall never exceed seven per centum upon the assessed value of the taxable property therein, nor shall any such municipality or district incur any new debt, or increase its indebtedness, to an amount exceeding two per centum upon such assessed valuation of property, without the assent of the electors thereof, at a public election in such manner as shall be provided by law." It is conceded by the defendants that at the time the ordinance was adopted and the contract was entered into for the construction of the sewer, the indebtedness of the borough exceeded the constitutional limitation. It is not pretended that the assent of the electors of the borough to an additional indebtedness such as this contract creates was obtained at a public election or otherwise. Unless, therefore, the plaintiff is by his laches estopped from invoking the constitutional mandate for his protection, which likewise is the protection of every other taxpayer of the borough, the second prayer of the bill must be granted, and the municipal authorities be restrained from a further application of the funds of the borough to this indebtedness.

In order to determine the question of the plaintiff's laches in filing his bill, we must ascertain and recur to the facts. The trial judge, while holding the plaintiff guilty of laches, has not found all the facts disclosed by the testimony in the case.

The plaintiff is a nonresident taxpayer of Olyphant borough. None of his real estate fronts on the line of the improvement. He is, therefore, not aggrieved by an assessment of benefits against him, but only as a taxpayer of the borough. The ordinance of July 28, 1898, authorizing the improvement, provides that " in no case shall the borough be liable to pay to the contractor any sum whatever, except what shall be actually collected upon said assessments " on properties benefited thereby. The contract provides that " compensation (to the contractors) is to be paid from moneys collected by virtue of the assessments upon the properties benefited, and in no case shall the borough be liable for any part of the cost of said sewer, except such portion as may be finally assessed upon them by the viewers appointed for the purpose of assessing the costs thereof, as finally confirmed by the court." By the provision of the ordinance, sealed proposals for the construction of the sewer were not to be invited until after the final confirmation of the report of viewers appointed to assess the damages and benefits. The report of viewers was not filed until March 13, 1899, to which exceptions were filed, and which were not disposed of when the decree in this case was entered by the court below.

The parties disagree as to when the plaintiff first knew of the proposed improvement. The plaintiff alleges it was in November, 1898, the month in which the sewer was completed. The defendants claim that it was in the summer or fall of 1898, and that, therefore, it was at the time the contract was made, or prior thereto. This is the inference the defendants draw from the plaintiff's own testimony. But we do not agree that such is the import of the language used by him on the witness stand. While it is somewhat indefinite, yet we think it shows that he did not see the work during its progress, and did not learn of the intention to construct the sewer until about the time of its completion.

Now if we assume, as claimed by the defendants, that the plaintiff, prior to the making of the contract and commencement of the work, was cognizant of the intention to erect a sewer, yet we are unable to see why he would be compelled to file his bill at that time or otherwise to rest under the imputation of laches. The information he would receive by an investigation at that time would be such as he might obtain from the

act of May 16, 1891, under which the improvement was made, the ordinance and the contract. Neither of these imposes an absolute liability on the borough for the expense of the sewer. The act of 1891 permitted the damages to be paid in whole or in part by the corporation or by the properties benefited as the viewers might determine, and the court might approve. The ordinance provides that the properties benefited shall pay the damages, and that the borough shall not be liable, and the contract imposes a liability upon the borough only in case the viewers should so determine by their assessment which necessarily would require the approval of the court. Hence the plaintiff could not know until a report of the viewers and its confirmation, that any part of the damages incurred by the construction of the sewer would be placed upon the borough, and that it would thus be compelled to assume a liability beyond the constitutional limit. He certainly had no right to presume that the municipal authorities would transgress their duties in this respect and thereby permit an infringement of the constitution. In this view of the plaintiff's duty, therefore, he could remain content with no imputation of laches, until the viewers had assessed damages against the borough and the court had concurred in their action. Had the borough officials proceeded as required by the ordinance, and had they not let the contract until after the final confirmation of the report of viewers, then any delay thereafter to restrain action by the officials of the borough from increasing its debt would have properly charged the plaintiff with laches. In face of the provisions of the ordinance, however, the contract was let September 12, 1898, "subject to the report of viewers," and their report was not filed until March 12, 1899.

In another view, which is supported by the facts in the case, the plaintiff did not know of the intended improvement until about the time of its completion. This was in November, 1898. His bill was filed the following March. It has not been shown, and it does not appear, that in this interim conditions were changed, or that any act was done by which the defendants were injured in any way. Since the plaintiff first learned of the improvement, there has been no change in the status of the parties or in the affairs of the borough to affect injuriously the defendants. Hence the plaintiff's "standing by for four months

after the work is done," as suggested by the court below, did no harm to the defendants, which could raise an equity in their behalf. If this were a proceeding to compel the defendants to refund money paid during the delay, there might be some force in the suggestion, but as it is to prevent future payments, defendants are not injured or their rights impinged. The work having been practically completed without the knowledge of the plaintiff, the delay in filing the bill would benefit the defendants rather than injure them.

We do not think that any laches can be imputed to the plaintiff until at least the date of filing the report in court, which was March 13, 1899. Until that time, he certainly had no right to presume that the provisions of the ordinance requiring the expenses of the improvements to be paid by the benefits assessed against the property owner would not be carried out, or to assume that the viewers would make an assessment against the borough and thereby increase its indebtedness beyond the constitutional limit. A knowledge of the construction of the sewer would not of itself, under the provisions of the ordinance and contract, have justified the conclusion that any liability would be imposed on the borough by the action of the viewers. The plaintiff, therefore, was not compelled to anticipate such a result and file his bill before the viewers had so determined and filed their report.

As the bill was filed in seventeen days after the report of viewers was presented to the court, it was done with sufficient promptness to repel any charge of laches.

The view we take of the case, therefore, determines it on the facts which, under well settled rules, relieve the plaintiff from the charge of undue delay in bringing his bill.

Many authorities have been cited by counsel on either side to support their contention as to what constitutes such laches as will estop a party from asserting his rights in a court of equity. It will be observed that they are all to the same effect, and that the only difference is that which arises in their application to the facts of the case under consideration. Under the facts of the case in hand, we think the appellee's construction of the numerous authorities cited by them does not sustain their contention. The efficacy of the rule established

by the authorities and invoked by the appellees depends solely upon what they claim to be the facts of this case.

The learned counsel for the appellees seems to think that the only objections that have been made to the proceedings in this case are of an extremely technical nature, and so long delayed that they are not entitled to consideration in a court of equity. From the reckless manner in which the proceedings were conducted by the borough officials, we think it is evident that their views fully coincide with those of their counsel. We have referred to, but have not discussed, what are termed " irregularities " in the proceedings. Our decision rests upon a plain and palpable violation of a provision of the constitution of the commonwealth by the municipal authorities. This, we regret to say, is too frequently regarded as nothing beyond a technical objection to the illegal action of the officers of many of the municipalities of the state. It is therefore incumbent upon the courts, when the opportunity is presented, to enforce the constitution in a manner that will impress upon officials and citizens alike the necessity of a strict observance of that instrument as the supreme law of the commonwealth. In the case in hand, it works no hardship to the contractors. To their allegation that they had no way of ascertaining the indebtedness of the borough, the answer is that it was their duty to ascertain it in some way, or to refuse to enter into the contract until the borough officials had satisfied them that the proposed additional indebtedness would be within the constitutional limit. Without taking this precaution, they acted at their peril. It is a general and fundamental principle of law that all persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or of its officers to make the contract; and a contract beyond the scope of the corporate power is void, although it be under the seal of the corporation : 1 Dillon on Municipal Corporations, sec. 447.

But it is apparent from the contract itself that neither the officials acting for the borough nor the contractors, were certain of the legality of the proceedings under which the improvement was to be made. It is there stipulated, as we have seen, that there should be no liability on the part of the borough, if the proceedings should be declared illegal. Any interpretation that may reasonably be given to this clause of the agreement is con-

vincing that both parties anticipated that a successful attack might be made upon the legality of the ordinance and the contract. Neither party, therefore, was acting without notice of a probable danger, and neither can now allege absolute good faith on his part against a taxpayer of the borough who invokes the enforcement of the constitutional provision prohibiting an increased indebtedness without the assent of the electors.

The answer alleges that the plaintiff has an adequate remedy at law and that, therefore, a court of equity has no jurisdiction. The question thus raised was not discussed or determined by the trial judge of the court below, who ruled the case solely on the ground of the plaintiff's laches. The counsel for neither party has discussed the right of the plaintiff to maintain the bill, and we shall not do so. Under the facts of this case, we think the plaintiff is entitled to have his right to the relief he seeks determined in a court of equity.

The decree of the court below is reversed, and it is now, March 11, 1901, ordered, adjudged and decreed that the bill be reinstated, and that an injunction be issued by the court below restraining the burgess, town council and treasurer of the borough of Olyphant from issuing any warrants and making payments to Flanagan and O'Horo or their assigns for or on account of the construction of said sewer. It is further ordered that the costs of the proceeding, including the costs of this appeal, be paid in equal proportions by the borough of Olyphant and Flanagan and O'Horo.