Kreusler *v.* McKees Rocks School District.

*Contracts—School district—Debt—Constitutional limit—Building—Ultra vires contract—Notice of invalidity—Public policy—Injunction—Subsequent suit on implied contract—Constructive contract—Set-off—Judgment for defendant n. o. v.*

1. The only authentic and admissible evidence of public policy of a state on any given subject is its constitution, laws, and judicial decisions, and the public policy of a state of which courts take notice and to which they give effect must be decided from those sources. Where the state has spoken, through its legislature, there is no room for speculation as to what the policy of the state is.

2. Where a written contract of a school board for the erection of a school building is ultra vires and against the policy of the state, as creating a debt in excess of the constitutional limit, and work under the contract is enjoined, an action subsequently brought by the contractor on an alleged implied contract must fail where all the work and materials were furnished under the express written contract. This is not a constructive contract.

3. In such case where the contract was entered into in June and

## 282 KREUSLER v. McKEES ROCKS SCH. DISTRICT.

the plaintiff continued work until enjoined in the following November, although notified by an association of taxpayers, before the work was begun, that the contract was illegal, and the taxpayers' bill to enjoin the work was filed in July, plaintiff had not only constructive but actual notice of the invalidity of the contract.

4. In such case where certain other work was done under a valid agreement made after the contract for the erection of the superstructure of the building, but the defendant claimed the right to set off a sum which it had paid the plaintiff on account of the work done on the superstructure under the illegal contract, the court properly refused to allow the set-off, as the amount claimed was paid under an illegal contract, and the law in such case leaves the parties in the condition in which it finds them.

5. A contractor cannot allege ignorance of the indebtedness of a school district, and where his contract offends the constitutional inhibition he is presumed to know that the contract is illegal and not capable of enforcement.

Argued Oct. 23, 1916. Appeals, Nos. 173 and 180, Oct. T., 1916, by plaintiff and defendant, from judgments of C. P. Allegheny Co., April T., 1914, No. 734, on judgment entered for defendant non obstante veredicto, and on judgment on verdict for plaintiff, respectively, in case of H. L. Kreusler v. The School District of the Borough of McKees Rocks. Before BROWN, C. J., MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Assumpsit on alleged implied contract for construction of school building.

The facts appear in the following opinion of SWEARINGEN, J.:

Two separate claims are embraced in this suit. First, the plaintiff seeks to recover the value of work done upon and materials furnished for a school building, and second, the value of certain repairs to the foundation of said building, which foundation had been built by another party. At the trial, there was no real dispute about the amount of the claim, but the right to recover for the first was denied, and, as to the second, the contention was that a payment of $10,200 should be credited to it instead of to the first, thus leaving nothing due the plaintiff at

all. The jury, under instructions, found a verdict for the plaintiff, stating each amount separately, so that we might determine the several questions of law upon this motion for judgment non obstante veredicto and thus end the whole controversy.

### FIRST CLAIM.

June 9, 1908, the school board of the district of McKees Rocks entered into written contract with Henry L. Kreusler, whereby he undertook the construction of the superstructure of a school building, for which he was to be paid the sum of $148,970, 85% thereof in monthly estimates as the work progressed, and the remainder within thirty days after completion. Before anything was done under the agreement, certain taxpayers of the district notified the school board and the contractor not to proceed with the work, because no provision had been made for increasing the indebtedness of the district by submitting the same to a vote of the electors, and further that an application for an injunction would be made, in case the notice was disregarded. This notice was served upon the contractor and the school board July 6, 1908. Thereafter a bill in equity was filed by taxpayers, in which it was alleged that the amount of this contract was in excess of 2% of the assessed valuation of property within the district, and that therefore the board had no power to incur such a debt without having first obtained the consent of the electors, which admittedly had not been sought. The prayers were, inter alia, for a decree declaring the contract void and for an injunction restraining its performance. Henry L. Kreusler, this plaintiff, was made a party defendant, and service of the bill was had on July 20, 1908. Then a supplemental agreement between the plaintiff and the school board was made July 27, 1908, wherein it was provided that no indebtedness should be created by the contract of June 9, 1908, beyond the extent of funds "legally available"

therefor, but there was no reduction in the amount of the obligation of the contract. The bill was answered by defendants and the cause came on for trial. November 10, 1908, the findings of fact and conclusions of law were filed, in which it was found that the indebtedness created by said contract was very largely in excess of 2% of the assessed valuation of property within the district. The contract was therefore held void, and an injunction was directed, restraining its performance. Exceptions filed by the defendants were overruled, and March 12, 1909, the final decree was entered in accordance with the decision. The defendants appealed to the Supreme Court, where the decree of the Common Pleas was affirmed: McKinnon v. Mertz, 225 Pa. 85.

The building was never completed, nor was any use made of what the plaintiff put in place.

After service of the bill as aforesaid, the contractor began the work of constructing said superstructure about August 1, 1908. He did not suspend operations until the entry of the final decree. During the period mentioned, the building was erected to about the floor of the first story, including the interior walls in the basement, and a large amount of material was delivered upon the lot to be used later. To the value thereof there were added 4% for overhead charges and 10% for profit, as shown in the amended statement of claim. Meantime, on August 5, 1908, the school board had paid Mr. Kreusler the sum of $10,200 in cash. The balance and the interest thereon constitute the first item of the verdict, to wit, $49,889.36.

The work the plaintiff did and the materials he furnished were under and pursuant to the written contract of June 9, 1908. He himself testified at the trial as follows:

"Q.—All the work you did on that superstructure was done under that instrument, or contract, was it not?

"A.—With the exception of the reinforcing—

"Q.—I say, all the work you did on the superstructure?

"A.—Yes, sir.

"Q.—All the work you did on the superstructure was done under that contract?

"A.—Yes, sir."

And there was other evidence to the same effect, and none to the contrary.

The contract under which the plaintiff did this work and furnished these materials was illegal; it was not merely ultra vires, it was in violation of public law. Our Constitution has expressly deprived school districts of the power of increasing debt beyond 2% of the assessed valuation of property within the same, unless by consent of the electors: Art. IX, Sec. 8. Therefore when this school board undertook of its own motion to incur a greater indebtedness, its action, being in direct violation of constitutional law, was absolutely void: Seylar v. Carson, 69 Pa. 81. And this has already been determined: McKinnon v. Mertz, supra. But when did this illegality of the contract arise? Manifestly at its very inception, because the board was attempting to perform a prohibited act. To what extent was it void? Certainly in its entirety, not merely partly but wholly. It therefore can not form the basis of any right of action, either directly as upon the instrument, or impliedly as upon a quantum meruit: Pittsburgh v. Goshorn, 230 Pa. 212.

Since the plaintiff cannot recover upon the written instrument, which he admits, yet he contends that he can recover the value of the work done and materials furnished by him as upon a quantum meruit, and he bases his demand upon the proposition, that the amount so claimed does not exceed the limit of the school board's power to contract indebtedness, and that therefore the district is liable, it having received the benefits. Is the principle, thus invoked, applicable to the facts and circumstances disclosed in this record? To succeed, the plaintiff must establish contractual relations with the

district; a mere fiction of the law is not sufficient. His is not a case where the district obtained this work and these materials by fraud or device or by violation of his rights, in which event the law will impose a duty of payment enforcible in form ex contractu, regardless of the intention of the parties. Such an obligation is sometimes designated a "constructive" contract. It is nothing but a fiction, adopted under circumstances above noted to prevent wrong. But it lacks the element of intention to enter into an agreement, which is essential to any contract whether express or implied. Hence, this theory will not avail the plaintiff. What the plaintiff is obliged to show is an implied contract, that is one which is inferred to exist from the facts and circumstances; and these he must prove with the same certainty as he would be required to do in case the arrangement had been expressly made. An intention to contract must appear. The distinction between constructive contracts, so-called, and implied contracts is clearly stated in Hertzog v. Hertzog, 29 Pa. 465.

But the plaintiff has entirely failed to establish any such implied contract with the school district. There was no evidence whatever of any request to him by the school board to do this work and furnish these materials, other than that contained in the writing of June 9, 1908. It was not pretended that there was any action taken by the school board, looking to any employment of the plaintiff other than that of said specific agreement. All we have is that the plaintiff did this work and furnished these materials upon land of the school district. But he himself testified that what he did was under the illegal agreement and not otherwise; and there is no doubt that such was the fact. Consequently no facts or circumstances are present, from which a contract can be inferred. And if none can be inferred, the case presented has no foundation upon which to rest. It is therefore of no importance that the value of the work done and materials furnished was within the contracting power of

the board. Neither the plaintiff nor the board intended to be bound otherwise than by the writing. That was void from the beginning and was incapable of ratification. We know of no hypothesis whereby it can become valid in part, so as to supply the basis of an implied agreement and thus render the school district responsible for what was not contemplated by either party.

This results in no legal hardship upon the plaintiff. He was dealing with a school district and was obliged to take notice of the limitation of the powers of the board of directors, because those are prescribed by public law.

"It is a general and fundamental principle of law that all persons contracting with a municipal corporation must at their peril inquire into the statutory power of the corporation or of its officers to make a contract; and a contract beyond the scope of the corporate power granted or conferred by the legislature expressly, or by fair implication, is void, although it be under the seal of the corporation": 2 Dillon on Mun. Corps., Sec. 777 (5th Ed.).

We therefore hold, upon principle, that the plaintiff was charged with notice of the invalidity of this contract. But the facts conclusively show that the plaintiff is not in position to complain of the action now taken by the school district. Before he did any work or furnished any materials, he was expressly notified that the contract was illegal. Notwithstanding this information, he proceeded to do the work and furnish the materials, for which he now seeks to hold the district liable. The slightest inquiry on his part, which we hold he was bound to make in any event, would have disclosed that the school board was utterly powerless to bind the district by the contract made with him. He need not have expended a dollar of the money that he now claims. It follows that his present situation is of his own making, and that without any fault on the part of the defendant.

In view of the foregoing we are of opinion that the

plaintiff cannot have judgment against the defendant for the first item of the verdict.

### SECOND CLAIM.

After the contract for the erection of the superstructure was made, the plaintiff was authorized to reinforce the foundation which had already been constructed. This was an entirely separate arrangement. The plaintiff did the work and furnished the materials and the amount claimed therefor with interest constitutes the second item of the verdict, to wit, $11,746.55. The amount of this contract was clearly within the limit of the board's authority. There was no dispute at the trial as to the amount. The evidence was sufficient to establish the employment of plaintiff by the board, and there was no evidence to the contrary. The defendant contends, however, that the plaintiff was paid $10,200 illegally, and that said sum can now be set off against his lawful demand for the value of the repairs to the foundation. In view of the decision in Pittsburgh v. Goshorn, supra, we are of opinion that this position is not well taken. This money was paid to Mr. Kreusler on his written contract. It was apparently paid without any actual intent to defraud the district. But having been paid upon an illegal contract, the law leaves "the parties just in the condition in which it finds them." Clearly the defendant has its action against the school board which unlawfully diverted the money entrusted to its care. This claim cannot therefore be set off against the just claim of the plaintiff for repairing the foundation of the school building. We therefore hold that the plaintiff is entitled to judgment for the value of his work and materials in repairing the foundation of said building, to wit, the second item of the verdict.

Verdict for plaintiff for $61,635.91, made up as follows: (1) $49,889.36 for work done in construction of superstructure, after deducting a payment of $10,200

made by school district out of funds of school district; (2) $11,746.55 for reënforcing foundation.

The court entered judgment for defendant n. o. v. as to the first item of the verdict and sustained the entry of judgment on the second item of the verdict. Plaintiff and defendant both appealed.

*Errors assigned,* among others, were in entering judgment for defendant non obstante veredicto as to the first item of the verdict, and in refusing to enter judgment for defendant non obstante veredicto as to the second item.

*R. A. Balph,* with him *James Balph,* for H. L. Kreusler.—Plaintiff was entitled to recover on the implied contract: Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41; McPherson v. Foster Bros., 43 Iowa 48; School Town of Winamac v. Hess, 151 Ind. 229 (50 N. E. Repr. 81); Herman v. City of Oconto, 110 Wis. 660 (86 N. W. Repr. 681); Ætna Life Ins. Co. v. Lyon Co., Iowa, 96 Fed. Repr. 325; Goodbar, White & Co. v. City Nat. Bk. of Suphur Springs, 78 Texas 450; Columbus v. Woonsocket Institution of Savings, 114 Fed. Repr. 162; Finlayson v. Vaughn, 54 Minn. 331 (56 N. W. Repr. 49)..

An implied assumpsit will arise against a public corporation as well as against an individual or private corporation: 1 Dillon on Municipal Corporations, Sec. 383; Louisiana v. Wood, 102 U. S. 294; Spring Brook Water Co. v. Pittston, 203 Pa. 223.

The contract between the plaintiff and defendant is not against public policy but ultra vires: Pearce v. Wilson, 111 Pa. 14; Riddle v. Hall, 99 Pa. 116; Healy v. Eastern Bldg. & Loan Assn., 17 Pa. Superior Ct. 385; Kernard v. Groman, 1 Lehigh Co. L. J. 220.

The plaintiff was not bound to stop on notice from taxpayers or on filing of the bill. He had a right to continue until stopped by decree of the court: Wentink v. Board of Freeholders of Passaic County, 66 N. J. Law 65.

All persons dealing with public corporations need to

look to, is the general power to make the ostensible contract: Bigelow v. Perth Amboy, 25 N. J. Law 297; Knapp v. Mayor & Council of Hoboken, 38 N. J. Law 371; State, Tappan v. Long Branch, 59 N. J. Law 371; Moore v. Mayor, 73 N. Y. 238.

*Samuel S. Mehard,* with him *Garnet R. Speer,* for the school district.—The plaintiff cannot recover for expenditures made in the erection of the school building under an illegal contract against which taxpayers protested and warned the builder before any considerable part of the expenditures were made, and where performance was subsequently forbidden by final decree of the court: Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41; Daviess Co. v. Dickinson, 117 U. S. 657; Northwestern Union Packet Co. v. Shaw, 37 Wis. 655; McKinnon v. Mertz, 225 Pa. 85.

The written contract being illegal, plaintiff cannot recover on a quantum meruit: Lehigh County v. Kleckner, 5 W. & S. 181; Hague v. Philadelphia, 48 Pa. 527; City of Erie's App., 91 Pa. 398; Brown v. City of Corry, 175 Pa. 528; Pittsburgh v. Goshorn, 230 Pa. 212; Thomas v. Richmond, 79 U. S. 349.

Plaintiff was charged with knowledge as to the illegality of the contract: Thomas v. City of Richmond, 79 U. S. 349; Oneida Bank v. Ontario Bank, 21 N. Y. 490.

A contract cannot be implied under the circumstances of this case: Hertzog v. Hertzog, 29 Pa. 465; Perkins v. Hart, Etc., 24 U. S. 237; Krouse & Gloyd v. Debloins, 1 Cranch. U. S. C. C. 138; Allen et al. v. Jarvis, 20 Conn. 38; Eckel v. Murphey, 15 Pa. 488; Powelton Coal Co. v. McShain, 75 Pa. 238; Harris v. Ligget, 1 W. & S. 301; Algeo v. Algeo, 10 S. & R. 235; McDowell v. Ingersoll, 5 S. & R. 101.

Where the direct object of the contract is illegal the agreement is void, though the parties did not know of the illegality: Favor v. Philbrick, 7 N. H. 326; Rosenbaum v. U. S. Credit System Co., 64 N. J. Law 34.

The law might imply a contract where a benefit was conferred without fault and retained by the recipient, but never does so where the alleged benefits consist of work and material in a building which are incapable of being definitely ascertained: Gillis v. Cobe, 177 Mass. 584; Kelly & Bragg v. Town of Bradford, 33 Vt. 35; Pinchers v. Swedish Evangelical Lutheran Church, 55 Conn. 185; Norwood v. Lathrop, 178 Mass. 208.

OPINION BY MR. JUSTICE MESTREZAT, January 8, 1917:

These are cross appeals from the same judgment, and will be considered together. We have examined the numerous authorities cited by counsel in both appeals and are not convinced that the conclusion of the learned judge of the court below is not correct. His opinion so clearly vindicates the judgment he entered that the discussion here will be only an amplification of the reasons he has so well stated. We are aware of the conflict of authority in the different jurisdictions on the right of a contractor to recover money expended or property delivered under a void contract, as appears by the cases cited, but we think the conclusion of the learned court below that under the facts and circumstances of this case there can be no recovery for work and materials furnished under such contract in an action of assumpsit on an implied contract is sustainable on principle and is supported by well considered decisions in many jurisdictions.

The action is assumpsit on an implied contract for the value of work done and materials furnished towards the construction of a superstructure of a school building for the defendant school district, and for repairs made on the foundation of the building which had been built by another party. The parties entered into a written contract for the erection of the superstructure of the building, but on a taxpayers' bill the court held that the contract created an indebtedness in excess of the constitutional limit and was, therefore, void and of no effect, and an injunction was awarded restraining its perform-

ance: McKinnon v. Mertz, 225 Pa. 85. After the contract was made in June, 1908, the plaintiff began work and continued operations until he was enjoined, in the early part of the following November, by the final decree of the Common Pleas. In the meantime, however, he was notified by an association of taxpayers that the contract was within the constitutional inhibition and not to proceed with the work, and later, on July 21st, the bill was filed by taxpayers to enjoin the carrying out of the contract for the construction of the school building. The plaintiff, therefore, had not only constructive notice of the invalidity of the contract, but also express notice by the taxpayers of the district that it was illegal and not to proceed with the work. He also disregarded the notice contained in the bill filed to enjoin him from doing the work under the contract. The building was never completed, nor has the defendant used the material put in place by the plaintiff. In this action, he claims to recover as upon a quantum meruit the value of the work and materials furnished during the time he was engaged in the operation on the ground that the defendant received the benefit of the work and materials and the amount claimed is within the constitutional limit authorizing the school district to incur an indebtedness.

We do not agree with plaintiff's counsel that he can recover his claim in an action on an implied contract. The contract of 1908 was ultra vires the school board and against the policy of the State. The only authentic admissible evidence of public policy of a state on any given subject is its constitution, laws, and judicial decisions, and the public policy of a state of which courts take notice and to which they give effect must be decided from those sources. Where the state has spoken through its legislature, there is no room for speculation as to what the policy of the state is: 9 Cyc. 482. The work and materials were furnished under the provisions of the written contract, as the plaintiff himself testified. The time when the work was begun—whether immediately as the plaintiff claims or a month after the contract was

let—is immaterial, and does not affect the learned trial judge's conclusion. The material and controlling fact is that all of the work was done on the superstructure under and in pursuance of the illegal contract. It may be conceded, as claimed by the plaintiff, that members of the school board were occasionally present while the work on the superstructure was in progress, and that the board's architect instructed the plaintiff to proceed with the work, but the evidence clearly discloses that these matters all occurred after the contract was let to the plaintiff, and were done solely under and in performance of the illegal contract. They furnish no ground whatever from which a contract on the part of the defendant can be implied to pay the plaintiff for the work and materials furnished for the building, and hence they are without merit as evidence in this action.

The plaintiff concedes that he cannot maintain an action on the written contract, and resorts to this action on a quantum meruit to recover the value of the work and materials furnished under the contract. His claim, as laid in the statement, is that "although said written contract between plaintiff and said school district was void for the reason given, yet said materials and work so furnished and done by plaintiff in good faith at the request of defendant being of very great value and being retained and still in the possession, use and control of said school district, and said school directors having authority to purchase and contract for the same and having ordered said materials and work on behalf of said school district and having accepted the same on its behalf, and said school district having received the benefit of said work and materials, said school district was and is liable to plaintiff for the fair market value of said work and materials." As already pointed out, all the work and materials were furnished under an express, and not an implied contract. The evidence fails to show, as appears above, any facts or circumstances from which a contract to pay for the work can be implied. The

plaintiff's proofs, therefore, did not sustain the allegations of the statement which were the grounds of his cause of action. If the plaintiff can recover on a quantum meruit under the facts and circumstances of this case, the constitutional inhibition laid on the power of a school district to create excessive indebtedness will afford very little protection to the taxpayers of a district. It would, in effect, be vitalizing a contract condemned by the Constitution and policy of the State. The basis of the claim here has no better or stronger support than the supplemental contract by which these parties attempted to evade the constitutional prohibition by limiting the manner of payment to legally available funds of the current revenues as they might arise from a special tax or otherwise. This device for legalizing an ultra vires contract did not avail the parties: McMinnon v. Mertz, 225 Pa. 85.

In addition to the claim for work done on the superstructure, the plaintiff claims for work done and materials furnished in reinforcing the foundation which had previously been constructed. This work was done under a valid agreement made after the contract for the erection of the superstructure. There was no dispute as to the amount due the plaintiff for the work, but the defendant district claimed the right to set off $10,200 which it had paid the plaintiff on account of work done on the superstructure under the contract which was subsequently declared illegal. The learned court below refused to allow the set-off on the ground that, as it was paid on an illegal contract, the law leaves "the parties just in the condition in which it finds them." This is the general rule to which the present case is not an exception. The contract for the construction of the superstructure was ultra vires the school board, and, therefore, incapable of enforcement. Hence, the plaintiff is not permitted to invoke its aid in collecting the amount due him for work done on the superstructure. For a like reason, the contract will not support an action by the de-

fendant school district to recover back the money which it paid illegally to the plaintiff for work done under the contract. The set-off, therefore, cannot be allowed as, in effect, it would be sustaining an action by the defendant for the money paid the plaintiff: Everson v. Fry, 72 Pa. 326. The plaintiff having notice of the wrongful act is in pari delicto with the school board. Neither is the victim of the other. The plaintiff knew, or is presumed to have known, that the contract was violative of the Constitution of the State, 2 Dill. on Mun. Corp., 5th Ed., Sec. 777, and hence void and not capable of enforcement. He cannot allege ignorance of the indebtedness of the school district: O'Malley v. Olyphant Borough, 198 Pa. 525. In this case it was said (p. 533): "To their (plaintiffs') allegation that they have no way of ascertaining the indebtedness of the borough, the answer is that it was their duty to ascertain it in some way, or to refuse to enter into the contract until the borough officials had satisfied them that the proposed additional indebtedness would be within the constitutional limit. Without taking this precaution, they acted at their peril." The law, under such circumstances, will not give relief directly or indirectly to either party.

The judgment is affirmed.