Heilig Bros. Company, Inc., Appellant, *v.* Kohler et al.

Argued September 29, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Thomas Stokes,* with him *John A. Hoober* and *Pepper, Bodine, Stokes & Hamilton,* for appellant.

*M. Carton Dittman, Jr.,* with him *George Hay Kain, Jr., Kain, Kain & Kain* and *Ballard, Spahr, Andrews & Ingersoll,* for Reliance Manufacturing Company, appellee.

*Palmer C. Bortner,* for York County Institution District, appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 20, 1950:

This is an appeal from a decree of the Court of Common Pleas of York County dismissing a bill in equity brought by a corporation, a taxpayer and unsuccessful bidder, to set aside a sale of land by the York County Institution **District.**

The York County Poor House had been removed from a tract of land consisting of approximately 15 acres. The County Commissioners, acting for the District under the act, were empowered to sell the land at private or public sale without court approval: Act of June 24, 1937 P. L. 2017, 62 PS 2255. (The Act of April 21, 1949 P. L. 704 requires court approval of all sales).

In June 1947 the land was offered for sale at public auction. At that time the Commissioners were Messrs. Trout, McDowell and Eyster. The Chief Clerk was, and still is, William H. Reynolds. The succeeding Commissioners are the present appellees: Messrs. Kohler, Keller and Eckert. Mr. Reynolds acted as Chief Clerk of both sets of County Commissioners (who, under the Institution District Statute, act for the District) and had possession of the official records. Appellant, Heilig Bros. Co. Inc., were the high bidders at the sale. The bid of $25,000 was rejected and the property was withdrawn from sale. Appellant, through its agent, then made a bid of $30,000 to the Commissioners. This offer was also rejected. The bidder was told by the Commissioners to make a better offer. On July 7, 1947 appellant by letter to the District made an offer of $36,500 accompanied by a check for $7000 as down money. The Commissioners then decided to *present* five acres of the land to the City as a playground. The offer was withdrawn as appellant would not pay $36,500 for the rest, or 10 acres. Appellant's check for $7000 down money was then returned.

The proposed gift of 5 acres to the City was not consummated, because counsel advised that the District could not *donate* land or property. The Commissioners did not thereafter offer the property for sale. On April 7, 1948 (9 months after the written offer of $36,500), an inquiry was received by two of the Commissioners as to whether the property was for sale.

It was stated that the inquiry was made in behalf of the Reliance Manufacturing Company, one of the appellees. This agent later met all three Commissioners. The question of sale was discussed but no price was named by the Commissioners. They concluded to appoint three real estate appraisers. The next day *one of the appraisers in a conversation with Kohler, president of the board, suggested that the land was worth from $22,000 to $25,000.* The Commissioners then orally offered to sell *the land to the appellee,* the Reliance Manufacturing Company, for $25,000, and the offer was accepted. There was no formal meeting of the board, no written contract executed and no down payment made. A few days thereafter the other two appraisers reported to the board. One appraiser fixed the value at $30,000 and the other at from $30,000 to $37,500. Such appraisals were ignored *and no effort was made to ascertain whether appellant was still interested in purchasing at $36,500.*

On April 20, 1948, another real estate broker inquired whether the land was for sale and the price. He said his inquiry was in behalf of an interested client. Kohler, the president of the board would not give a price.

On April 30, the District Board, consisting of the three County Commissioners, held a *formal* meeting. The meeting was an open or public one. Two newspaper reporters, Kling and Wolf, attended. A resolution was unanimously passed accepting the Reliance Manufacturing Company's offer of $25,000 and authorizing the execution of the deed, *which had already been prepared and was in the Commissioner's possession ready for execution.* Reporter Kling inquired whether the Commissioners had contacted appellant, Heilig Bros. Company, Inc. Kohler answered NO. Both reporters continued to ask questions but received no replies. Reporter Kling then rushed to an outside

telephone and ascertained from appellant's director and treasurer that its offer still held good. Mr. Kling then reported this fact to the meeting. The attorney for Reliance and a representative of the title company were present in the meeting room when Kling made this report. The stated reason for their presence at the meeting was to examine the resolution and deed. Kohler, the chairman of the board, despite this notice, proceeded to execute the deed. The telephone rang. Appellant's director and treasurer was calling Kohler to confirm the fact that the offer of $36,500 still was open. The telephone was held open by the secretary of the board *while the deed was being notarized.* When Kohler answered the telephone and was informed that the offer was still open, he told appellant's director and treasurer that the deed had just been executed. The deed, however, had not been formally delivered. The Reliance Company's check was yet on the desk. Mr. Heilig, a director and treasurer of appellant, then telephoned counsel and together they went to Mr. Kohler and again renewed the $36,500 offer. Meantime the deed had been recorded. Suit was promptly instituted.

The Institution District, appellee, resisted the setting aside of the deed upon three grounds (a) Heilig Bros. Company, Inc. was not a taxpayer and, therefore, had no pecuniary interest and hence possessed no status to institute the suit (b) the District had power to sell land without court approval (c) a consummated sale of real estate cannot be set aside because of a subsequent higher offer. The purchaser, the Reliance Manufacturing Company, the other appellee, made the identical defense. The court below sustained these contentions and gave the additional reason that "Reliance Mfg. Co. [appellee] was a purchaser in good faith and not guilty of any fraud or improvident (sic) act in any way affecting the sale of said Poor House

Tract by the York County Institution District." Exceptions were dismissed by the court in banc. This appeal followed.

The present action in substance is a taxpayer's bill. While the bill does not *aver* that plaintiff is a *taxpayer*, counsel for appellant asserted at the oral argument and in his paper book, that appellant pays taxes on real estate in the city of York and which was not refuted. Plaintiff is a Pennsylvania corporation doing business in York. A corporation, so chartered and operating within the Commonwealth, is necessarily a taxpayer to the Commonwealth. Indeed it could not avoid being one. A county institution district is a state agency performing a governmental function: *Chester County Institution District et al. v. Commonwealth et al.*, 341 Pa. 49, 17 A. 2d 212. The bill states that the action is instituted "in its behalf and in behalf of all parties who may intervene." Plaintiff also possessed the status, as a disappointed bidder, to institute this suit: *Reichert Estate*, 56 D. & C. 1, opinion of Mr. Justice LADNER, then a judge of the Philadelphia Orphans' Court, affirmed in 356 Pa. 269, 51 A. 2d 615. We disagree with the learned court below that the appellant has no pecuniary interest in this litigation.

No one can seriously question that under the County Institution District Law of 1937, supra, court approval of a sale was unnecessary. Indeed, in the prior record of this proceeding, we note, as a matter of judicial knowledge, that a petition for court approval of the questioned sale was presented and denied. Such denial however, was not based upon the fact that court approval was unnecessary.

It is conceded, as indeed it must be, that the Commissioners, acting in behalf of the Institution District, were fiduciaries. They were dealing with *public* property. The Commissioners and all dealing with them

were required to exercise the utmost good faith, fidelity and integrity. The present situation is *not* one where a higher offer was made AFTER a consummated *bona fide* sale. Here a much greater price was offered BEFORE the sale was made. We need not again recite the facts and circumstances leading up to the sale and conveyance of the District's real estate. In secrecy and with no convincing reason assigned for the inordinate haste the Commissioners sold the land to Reliance Manufacturing Company for $25,000. Insofar as the Commissioners of the Institution District are concerned, it was a clear breach of trust and a fraud for them to sell public land without the slightest effort to ascertain whether the greatly increased offer over the contemplated sale price was still good, especially after actual notice immediately prior to and during the execution of the deed. The above facts establish the Commissioners' negligence and wrongful conduct which ordinarily would require the setting aside of such an iniquitous transaction.

Reliance Manufacturing Company, appellee (purchaser), contends that it was a purchaser for value without notice and that it made the purchase in good faith. See *Noonan Estate*, 361 Pa. 26, 63 A. 2d 80. The court below so found. We are, therefore, required to examine the evidence to ascertain whether it supports this finding. It is axiomatic that supported findings of fact made by a chancellor, and approved by the court in banc, will not be disturbed: *Teats v. Anderson et ux.*, 358 Pa. 523, 58 A. 2d 31; *Fellabaum v. Alvarez et ux.*, 165 Pa. Superior Ct. 173, 67 A. 2d 788. Such rule, however, does not apply to *deductions or inferences* which are made by the chancellor from the evidence. Such findings of fact are no more than his reasoning, which is always reviewable on appeal: *Brooks et al. v. Conston et al.*, 356 Pa. 69, 51 A. 2d 684, and the cases therein cited.

When this appellee was dealing with Commissioners, especially when engaged in selling *public* land, it was immediately put upon notice as to the powers and authority of such fiduciaries: *O'Malley v. Olyphant Borough,* 198 Pa. 525, 48 A. 483; *Pittsburgh Paving Company, for use, v. Pittsburgh,* 332 Pa. 563, 569, 3 A. 2d 905; *Kane et al. v. Girard Trust Company et al.,* 351 Pa. 191, 196, 40 A. 2d 466. Failure by a fiduciary to obtain the most advantageous price constitutes a breach of trust: *Leslie's Appeal,* 63 Pa. 355; *Kane et al. v. Girard Trust Company et al.,* supra; *Herbert Estate,* 356 Pa. 107, 51 A. 2d 753. If Reliance *knew* or *should have known* before the contract was consummated, that the board could have obtained a better price for the property and failed to do so, Reliance is not then a *bona fide* purchaser.

It is not disputed that the Commissioners did nothing to ascertain whether the higher offer was still firm. Any person dealing with his own property certainly would make this inquiry. Agents for appellee also knew of the previous offer. Mr. Fantus, appellee's factory location consultant, selected the real estate here involved but also negotiated the sale. He was fully aware of appellant's prior offer but made no inquiries respecting the same. Mr. Zerfing, the title officer, possessed the same knowledge. He also supervised the execution of the deed and examined the resolution of sale, in the circumstances narrated. The knowledge of an agent who acquires property for his principal affects the interests of his principal in the subject matter to the same extent as if the principal had acquired it with the same knowledge: *National Bank of Bedford v. Dr. J. C. Stever,* 169 Pa. 574, 32 A. 603; *Sisney v. Diffenderffer et al.,* 323 Pa. 337, 185 A. 830; Restatement, Agency, Sec. 274.

In addition to the knowledge acquired by the agents of Reliance, the entire transaction was conducted with

extreme haste and with great secrecy. All preliminary negotiations were conducted informally. Up to and until April 30th, the negotiations of the pending sale were not raised or discussed at any of the public meetings held by the board. Only the members of the board and appellee Reliance were aware that the tract in question was for sale. No minutes were kept of the negotiations. It was only after all preliminary negotiations had been completed and after the terms and price of the sale were agreed upon, that a public meeting was held. It was at this meeting that the parties intended to culminate and make formal their previous informal agreement. Both the resolution and the deed were prepared in advance. A representative of title company and the attorney for Reliance were waiting to be called to the meeting. With such advance preparations being made the Institution District held its meeting on April 30th.

This meeting occurred about 11:30 a. m., immediately following a meeting of the same individuals as County Commissioners. The District then passed its previously prepared resolution to accept the offer of Reliance. The board's solicitor then contacted the representatives of Reliance. Reporter Kling interrupted these mechanical proceedings and asked the board whether they had consulted the plaintiff. After receiving a negative reply, Kling called plaintiff who told him that the original bid of $36,500 still stood. Kling immediately returned to the meeting room and informed the board of plaintiff's re-offer. It is a necessary deduction that representatives of Reliance were present when Kling returned and informed them of plaintiff's re-offer. Mr. Eckert, a member of the board, stated: "Q. And what took place after they [representatives of Reliance] arrived? A. I don't know exactly what the next step was, because, immediately after the adoption of the resolution, there was so much commotion in

there it was pretty hard to tell. Mr. Kling was running out to one telephone, and Mr. Wolf to another, and they were asking questions of all of us and we weren't giving them any answers. I don't know that I can follow the sequence of events after that." Mr. Kling, the reporter, testified that he left the room to make the call and then returned to inform the board of plaintiff's re-offer. Reliance, in its answer, avers that after the resolution was passed, its representatives "appeared promptly" before the District Board. Mr. Zerfing, representing the Land Title Bank and Trust Company, stated that he arrived at the office of the Commissioners shortly after 11:00 a. m. Mr. Kohler testified that the representatives of Reliance came into the meeting with Mr. Zerfing. Thus, despite the knowledge of *both* appellees of a higher offer they proceeded with the settlement. The deed, previously prepared, was signed. The check was lying on the table. While Kohler was acknowledging the deed, the telephone rang. Plaintiff confirmed what he had already stated to Kling, i. e., that his offer of $36,500 still stood. The secretary of the board held the phone until Kohler had completed his acknowledgment and then handed the telephone to Kohler. Being informed again of plaintiff's re-offer, Kohler told Mr. Heilig that the transaction was completed and that nothing further could be done. This entire transaction took but about thirty minutes. The deed was recorded immediately.

If Reliance were acting in good faith and were unaware that a higher offer had been submitted for the property, it is highly improbable that the negotiations would have been conducted so quickly. The secrecy and haste of the entire transaction is apparent. In addition, the plain import from this testimony is that representatives of Reliance were present when Kling returned from his telephone call and heard Kling announce that plaintiff would pay $36,500 for the proper-

ty. Even if it is doubtful (and we do not so consider it) that Reliance were present, when considering *all* the facts in the case, the obvious and undeniable circumstances were such as to put Reliance upon inquiry and so bind them with the legal equivalence of notice: *Cameron, Secretary of Banking, v. Peoples' Bank of Maytown,* 297 Pa. 551, 147 A. 657; *Noonan Estate,* supra. Defendant Reliance cannot be given the status and protection of a *bona fide* purchaser.

The decree is reversed; the deed is set aside and title to the premises so conveyed declared to be in the York County Institution District. Costs to be paid by appellees.