## Allied Security, Inc. v.
## A & S Security Systems, Inc.

*F. N. Frank*, for plaintiff.
*James Dodaro* and *Leonard Mendelson*, for defendants.

HESTER, *J.*, February 18, 1976—Presently before the court is plaintiff's action in equity which seeks a preliminary injunction enjoining and restraining defendant, Public Parking Authority of Pittsburgh (hereinafter referred to as "parking authority") from entering into two contracts for the "collection of parking meter revenues and other related services within the City of Pittsburgh for the Public Parking Authority of Pittsburgh" with defendant, A & S Security Systems, Inc. (hereinafter referred to as "A & S") for so long as one Harvey Adams remains in the employ of the City of Pittsburgh as a member of its police force and is president of said defendant, A & S.

The facts giving rise to the initiation of the within action in equity may be briefly summarized as follows:

1. On or about October 15, 1975, defendant, parking authority, published certain specifications

for the letting of two separate contracts for various services to be performed relative to the parking authority's parking meters, including, but not limited to, the collection of meter revenues, the protection of said meters against damage, and to provide parking authority with personnel in full dress uniform for the execution of said services.

2. At the time of the bringing of the within action, plaintiff, Allied Security, provided the aforementioned services to defendant, parking authority, pursuant to a valid contract, which contract is to expire at the time of the letting of the two contracts here in controversy.

3. Both plaintiff, Allied Security, Inc. (hereinafter referred to as "Allied Security") and defendant, A & S, did timely submit sealed bids in accordance with said contract specifications.

4. Following the public opening and letting of the proposals submitted, it was announced that for both proposals, the lowest bidder was defendant, A & S.

5. At the time of the filing of the within complaint in equity, the contracts for the two proposals had not been awarded to defendant, A & S, by defendant, parking authority.

6. The president of defendant, A & S, is one Harvey Adams, who is employed by the City of Pittsburgh as a member of its police force.

It is plaintiff Allied Security's contention that an award of either contract by defendant parking authority, to defendant, A & S, would be void and invalid as being contrary to public policy and the laws of Pennsylvania due to the fact that the president of defendant, A & S, is also a policeman of the City of Pittsburgh, and it is averred that it is incompatible for a City of Pittsburgh policeman to also

serve as president of a corporation which has contractual ties with the Pittsburgh Parking Authority.

Accordingly, plaintiff, Allied Security, brought the within action in equity seeking the aforementioned preliminary injunction.

A hearing on said petition for preliminary injunction was held before this court on November 21, 1975. At said hearing, the following persons gave testimony: Joseph J. Wozniak, the executive director of the parking authority; Harvey Adams, the president of defendant, A & S; and Richard Schwab, an employe of plaintiff, Allied Security.

Defendant, A & S, contends that plaintiff, Allied Security, lacks the capacity or standing to bring this action.

In Heilig Bros. Company, Inc. v. Kohler, 366 Pa. 72, 76 A. 2d 613 (1950), the Pennsylvania Supreme Court found that one who was an unsuccessful bidder on a public contract has the right to bring a suit to enjoin the contract as long as the moving party is a taxpayer. In the instant case, plaintiff filed an amended complaint alleging that it is a taxpayer. "A corporation, so chartered and operating within the Commonwealth, is necessarily a taxpayer to the Commonwealth. Indeed it could not avoid being one. . . . Plaintiff also possessed the status, as a disappointed bidder, to institute this suit.": Heilig, supra, at 77.

In its brief, defendant, A & S, alleges that plaintiff lacks standing to sue because "neither Allied nor any other taxpayer of the City of Pittsburgh pays taxes to the Pittsburgh Parking Authority."

With defendant A & S's position on the "standing" issue, this court does not agree. The Pittsburgh Parking Authority was created pursuant to enabling legislation found in 53 P.S. §301 et seq., spe-

cifically 53 P.S. §341, known as the Parking Authority Law, Act of June 5, 1947, P.L. 458, sec. 1. Section 345 of said act provides, in relevant part:

"§345. Purposes and powers; general

"(a) The Authority, incorporated under this act, shall constitute a public body corporate and politic, exercising public powers of the Commonwealth as an agency thereof, and shall be known as the Parking Authority of the city, borough or township of the first class, but shall in no way be deemed to be an instrumentality of the city, borough, or township of the first class or engage in the performance of a municipal function."

Accordingly, in coupling the exercise of public powers as an agency of the Commonwealth with the allegation that plaintiff corporation is a taxpayer of the city and the Commonwealth, leaves little doubt as to plaintiff's standing to bring this action as a taxpayer's suit in equity.

The essence of plaintiff's complaint to enjoin the Pittsburgh Parking Authority from entering into the contract in question with defendant, A & S, is founded upon the theory that the letting of such contracts "would be void and invalid as being contrary to public policy and the laws of the Commonwealth of Pennsylvania because of the fact that the president of defendant A & S is an employee of the City of Pittsburgh and defendant Parking Authority is a creation of the City of Pittsburgh" and ". . . because it is incompatible for the president of defendant A & S to carry on the business of a private security guard and at the same time be vested with the authority of a policeman of the City of Pittsburgh."

In support of its contention, plaintiff directs the court's attention to Stanley Appeal, 204 Pa.

Superior Ct. 29, 201 A. 2d 287 (1964); a general order issued under date of November 25, 1975, by the City of Pittsburgh Superintendent of Police; City of Pittsburgh Ordinance 148 of 1968, paragraph 17; the City of Pittsburgh Home Rule Charter, § 706, which becomes effective January 1, 1976 (the estimated time of the inception of said contracts in question); and to the Parking Authority Act itself, 53 P.S. §351(d), captioned "competition in award of contracts."

53 P.S. §351(d) provides:

"(d) No member of the Authority or officer or employe thereof shall either directly or indirectly be a party to, or be in any manner interested in, any contract or agreement with the Authority for any matter, cause or thing whatsoever by reason whereof any liability or indebtedness shall in any way be created against such Authority. If any contract or agreement shall be made in violation of the provisions of this section the same shall be null and void and no action shall be maintained thereon against such Authority."

City of Pittsburgh Ordinance 18 of 1968 at section 17 provides:

"No contract shall be made with any elected or appointed official, officer or employee of the City of Pittsburgh, or with any corporation, partnership, or other entity of which he is a member, and if any such official, officer or employee shall, during his term of office or employment, knowingly acquire an interest in any such contract, he shall forfeit his office."

The new City of Pittsburgh Home Rule Charter with an effective date of January 1, 1976, provides, at section 706:

"No elected official, officer or employee shall in any manner receive benefit from the profits or emoluments of any contract, broadly construed and strictly enforced. Any violation of this section shall cause the offending official, officer or employee to forfeit his office or employment."

Plaintiff contends that while the contracts in question are to be let by the Public Parking Authority of Pittsburgh, due to the nature of the services to be rendered by the successful bidder with regard to the protection of the City of Pittsburgh property and the collection of revenues from City of Pittsburgh parking meters, "the Parking Authority in effect acts as a conduit for the City of Pittsburgh in this matter." Therefore, plaintiff argues, that when considered together section 351(c), the City ordinance and section of the new Home Rule Charter as above quoted, are applicable and dispositive of the present controversy.

Decidedly contrary to the "conduit" theory, however, is the broad statement found in the general purpose and power provision as above quoted that ". . . (the Parking Authority) shall in no way be deemed to be an instrumentality of the city . . . or engage in the performance of a municipal function."

This court, therefore, is of the opinion that there is no controlling legislative mandate, statutory or by ordinance, which prohibits the letting of the contracts in question by defendant, Pittsburgh Parking Authority, to defendant, A & S.

Plaintiff argues that there is a "potential conflict of interest" if said contracts were to be effected between defendant, Pittsburgh Parking Authority, and defendant, A & S.

It is this court's recollection of the testimony that Harvey Adams, presently a City of Pittsburgh policeman, is also president of defendant, A & S, and ultimately responsible for the management of its affairs. Moreover, Mr. Adams is a stockholder in A & S and, therefore, has a direct pecuniary interest therein.

The rationale so well articulated in Stanley Appeal appears to be equally applicable in the case at bar. There, the Superior Court affirmed the action of the lower court in suspending a private detective's license for as long as that individual continued to hold the position of constable. The court dismissed one argument when it held that a private detective is engaged in a business and does not hold an office within the constitutional meaning, which Constitution grants exclusive power to the legislature and not to the courts to declare what offices are incompatible: Pa. Const., Art. XII, sec. 2, now Art. V, sec. 2, Stanley Appeal, at 32, and A. 2d 288.

The Superior Court found that:

"The court below properly held that, as a *matter of public policy*, it is incompatible for one vested with the authority of a constable to carry on the business of private detective." (Emphasis supplied.) After detailing certain duties, rights and powers conferred upon constables which are not conferred upon all private citizens or upon private detectives, the court concluded, at page 32:

"To give these powers, conferred upon a duly elected constable for the benefit of the public, to a person licensed to act for private persons, *creates the distinct possibility of grave abuses. The public policy against* allowing one clothed with such extraordinary authority to act as a private detective

for private employers seems obvious. . . ." (Emphasis supplied.)

In view of the absence of a direct legislative prohibition which specifically controls the case at bar, this court is of the opinion that the letting of the contracts in question by defendant, Pittsburgh Parking Authority, to defendant, A & S, is not contrary to stated public policy.

We are here confronted with the fact that the legislature has mandated that: "No officer, employe or member of the Authority shall be a party to or in any manner interested in any contract or agreement with the Authority." The legislature has further mandated that: "No elected official, officer or employe of the City of Pittsburgh shall in any manner receive benefits from any contract with the said City of Pittsburgh." However, the legislature has remained silent insofar as employes of the authority being interested in any contract with the City of Pittsburgh, and has remained silent insofar as employes of the city being interested in contracts with the authority. Plaintiff, in substance, is requesting that the court do something which the legislature has not seen fit to do. A ruling by this court to the effect that the parking authority should not accept the bid of A & S due to the fact that the president of A & S is a member of the Police Department of the City of Pittsburgh, would constitute an invasion of the powers accorded to the legislature. We must conclude that if the legislature desired to prohibit employes of the city receiving benefits from contracts with the authority, and employes of the authority receiving benefits from contracts with the city, it would have been a most simple matter to prohibit this activity by the appropriate legislation. This court lacks the authority

to act where the legislature has seen fit to remain silent.

We are of the opinion that to permit the authority to accept the contract with A & S would not be contrary to public policy.

The City of Pittsburgh Superintendent of Police realized the potential for a serious conflict of interest inherent in a situation wherein a city policeman maintains secondary employment as a private detective, or in the operation of a detective agency, within the City of Pittsburgh. In issuing a general order on November 25, 1975, order #75-11, prohibiting such activity, said superintendent states: "When a Pittsburgh Officer acts in the capacity of a private detective, it represents a *serious conflict of interest*." However, Harvey Adams does not intend to act as a private detective. Testimony reveals that he is the president of defendant, A & S Security Systems. A & S is not a detective agency, and Harvey Adams will not be acting as a private detective.

The court finds no conflict of interest between the duties imposed upon Harvey Adams as a police officer and those imposed upon him as president of A & S Security Systems. We are, therefore, of the opinion that we must deny plaintiff's request for a preliminary injunction.

Accordingly, this court in the exercise of its equitable jurisdiction, must refuse the prayer of plaintiff's petition for preliminary injunction.

An appropriate order shall be entered.

## DECREE NISI

And now, February 18, 1976, plaintiff's bill in equity seeking a preliminary injunction having come before the court, following an extensive hearing thereon, and a review of the record, as well as

the excellent briefs of counsel, it is hereby ordered, adjudged and decreed that plaintiff's request for a preliminary injunction be and the same is hereby refused for the reasons set forth in the foregoing adjudication.